No. 148.—CITY OF SHREVEPORT *v.* FRANK C. WALPOLE.

No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of land to the public use. All that is required is the assent of the owner of the land, and the fact that it is being used for the purposes intended. 18 An .560; 21 An. 244.

A third party, occupying lands that have been dedicated to the public use, is without the capacity to acquire title thereto, because such lands are, from the moment of the dedication, out of commerce and are not subject to individual or private ownership. .21 An. 244.

APPEAL from the Tenth Judicial District, parish of Caddo. *Levisee,* J. *T. T. Land* and *J. W. Jones,* for plaintiff and appellee. *Looney, Wells & Duncan,* for defendant and appellant.

TALIAFERRO, J. The plaintiff alleges that the defendant is in the wrongful and illegal possession of a portion of the "open space" belonging to the corporation of Shreveport for public uses. The plaintiff designates the portion of the "open space" alleged to be in the illegal possession of the defendant, as block No. 70, according to Gooch's survey and map of the open space, and which, they aver, lies between Commerce street and the river. They aver that defendant has been in illegal possession of the premises specified since the fifteenth of October, 1864, and that the ground and buildings thereon, so illegally held by defendant, are worth one thousand dollars per annum. They pray that defendant be ejected from block No. 70; that the same be decreed to belong to the city of Shreveport, for public uses, and that defendant be decreed to pay the plaintiff at the rate of one thousand dollars per annum from the fifteenth of October, 1864, with five per cent. interest per annum thereon from judicial demand, and all costs, etc.

In an amended petition, the plaintiff aveys that the city of Shreveport has held peaceable possession of all, or of the greater part of the ground embraced within the "open space" since the twentieth of March, 1839, when the city was incorporated.

The defendant answered by general denial. In a supplemental answer, he avers that the improvements placed by him on the place the plaintiff seeks to dispossess him of, are worth five thousand dollars, and prays, in case of eviction, that he have judgment against the plaintiff for that sum, as the value of his improvements.

The judgment of the lower court was in favor of the plaintiff, decreeing the ground in controversy to be delivered to the plaintiff, to be used for public purposes; that the defendant vacate the ground and premises claimed by plaintiff, and surrender the same within three months, and, in default thereof, that a writ of possession issue according to law. From this judgment the defendant appeals.

The ground upon which the defendant seems principally to rest his defence is, that the property now pretended to be dedicated to public use, not being *ultra commercium,* the plaintiff must establish title in writing, and refers to article 449 of the Civil Code. He contends that the block No. 70, or the ground in controversy, comes within the definition of common property, which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues. He avers that the corporate authorities of Shreveport have treated the property in question as having that character, by leasing it, and assessing taxes against persons occupying it. He produces notices to pay taxes to the corporation, and tax receipts for taxes paid to it. He shows an ordinance of the corporation for the laying off the "open space" into lots, and for the sale of them. He produces witnesses to prove that the *locus in quo* had never been used by the city for public purposes.

The plaintiff asserts its title to the property for public uses as being established by dedication made by the original proprietors of the land upon which the city of Shreveport stands, and who laid out and established the then town of Shreveport. A title so derived is not required to be proved by deed, but may be shown by any species of legitimate evidence. The defendant shows no title in himself, and simply denies that the plaintiff has any. He asserts that the city never accepted block No. 70 as dedicated to public uses, and that it never had any sort of possession of the same; that the city never used it, and that it was never susceptible of being converted to public uses.

The plaintiff shows that a tract of land, of six hundred and forty acres, was reserved to Larkin Edwards out of the lands ceded by the Caddo tribe of Indians to the United States, by treaty entered into in the year 1835; that this tract of land was sold by Edwards to the Shreveport Company, which was incorporated on the seventh of February, 1837; that the company, about that period, laid off the town of Shreveport, at Bennett & Cane's Bluff, on the south side of Red River, upon the location made there of the grant to Larkin Edwards; that

the town was incorporated by act of the Legislature, passed in 1839. The plaintiff shows an authenticated copy of the original map or plan of the town of Shreveport, by which it is seen that the scope of ground within the limits of the town, known or called "The Open Space," lying between Commerce street and the river, was not run off or subdivided into squares and lots as the other portions of ground within the limits of the town were laid off. A map or plat subsequently made from a survey of the "open space" by Gooch, in 1852, is in evidence, and this plan shows that the block No. 70, the ground in controversy, is within the open space.

It is shown that the original proprietors of the property upon which the town was laid off never claimed or exercised ownership over the vacant ground. It is shown that the corporation of the city took possession and control of the open space at an early day as public property; the precise time is not fixed, but an ordinance passed fourteenth November, 1848, is introduced, which shows that the city was then in possession of it, and had buildings and tenants upon it. This was posterior, by near five years, to an act of partition of the unsold squares and lots among the original proprietors. The partition then made, and now in evidence in this case, proves much in support of the plaintiff's right. It was a judicial partition, made with much formality and exactness. It was preceded by an inventory of all the unsold squares and lots. Neither the inventory nor the partition embrace the open space. No account was taken of it in this final settlement and division of the common property between the former owners and founders of Shreveport.

It is difficult to believe that this large area of land, extending a mile in length, and of sufficient width between Commerce street and the margin of the Red river to serve the purposes of commerce and of public grounds, had it been private property, or considered to belong to the parties to the partition, would have been overlooked entirely by them on that occasion, when so much care was observed to ascertain and bring into the division all the town property to which they asserted ownership. The inference is not easily to be avoided, that the open or vacant space within the town limits, then and now shown by the maps, was intended by the founders of Shreveport to be a dedication for public uses, made on a large and liberal scale, commensurate with their views of the future importance and large commerce of their newly established town.

The plaintiff introduced as a witness a citizen of Shreveport, a man advanced in life, who first came to the place in the year 1837, and who has been a practitioner of medicine there ever since. This witness knew personally all the original proprietors, and some of them intimately. He had conversations with nearly all of them—heard them say that this open space between blocks sixty-four and sixty-five,

according to the map in evidence (and which embraces all the "open space"), had been dedicated to public uses. These declarations were made to parties proposing to buy property on Commerce street. But never heard them make similar declarations in regard to any lots above Texas street.

Our predecessors had occasion to examine this question of dedication by the Shreveport Company of the ground lying in front of that city, in the case of Paulina Pickett et al. *v.* Wm. Brown et al., decided at Natchitoches, in August, 1866. 18 An. 560. This was a suit by the plaintiff to recover from the city of Shreveport three lots within the "open space" referred to. The record of that suit, and the decree rendered in it, are in evidence in the present case. The court there decided that the open space was a dedication for public uses to the city of Shreveport, and gave judgment accordingly. We will remark that, in the case now before us, the proof of the intention of the original proprietors to dedicate the scope of ground in question to the corporation for public uses, is even more full and complete than in the former. It was said, in the case of Pickett et al. *v.* Brown et al., just referred to, "that the dedication of property for public uses may be inferred from facts and circumstances which leave no reasonable doubt upon the mind of the intention of the owner to make such a disposition, we think there can be no question."

The case of the City of Cincinnati *v.* The Lessee of White, 6 Peters' Reports Decisions Supreme Court of the United States, followed by various decisions of this court, is referred to. The doctrine is there also laid down (6 Peters) that "there is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended." See also 3 An. 282, and 7 An. 223 and 498, and cases there cited.

The objection of the defendant that no acceptance of the dedication is shown, and that it is incumbent upon the plaintiff to show such acceptance, is without weight. It is well settled, by repeated decisions, that a formal acceptance is not necessary. If any were required, the facts abundantly show an acceptance in the present instance. See, also, on this point, the leading case in 6 Peters, above referred to.

The dedicated property, being held as a public trust, and for public uses, is inalienable by the corporation. It is of that class of property defined in the first clause of article 449 of the Civil Code as "common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common, such as the streets, the public walks, the quays."

The defendant could acquire no title to the property he sets up claim to. His payment of taxes can confer no title. Besides, he appears to be a mere naked possessor, without title. From all the circumstances

shown relating to his occupancy of the *locus in quo*, it seems he must have known that the title to the property was in the city, and he can hardly be considered a possessor in good faith.

We think the case fully made out on the part of the plaintiff; and it is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.