[No. 8796. Department Two. October 10, 1910.]

THE STATE OF WASHINGTON, *on the Relation of* NORBERT R. SYLVESTER *et al., Plaintiff*, v. THE SUPERIOR COURT FOR BENTON COUNTY, *Respondent*.[1]

RAILROADS—FRANCHISES—FORFEITURE—MUNICIPAL CORPORATIONS—ORDINANCES. A railroad franchise in city streets, granted by ordinance, may be forfeited by a resolution of the city council, in the absence of statutory or charter provisions requiring the forfeiture to be by ordinance.

EMINENT DOMAIN—USE OF CITY STREETS—FRANCHISE—CONDITION PRECEDENT. A railroad company cannot condemn an abutter's interest in a city street in which it seeks to lay its railway tracks without first obtaining a franchise from the city giving it the right to the use of the streets.

SAME—RIGHTS OF ABUTTERS. An abutter upon a street, whose interests are being condemned by a railroad company seeking to use the street for railroad purposes, after its franchise therefor has been forfeited by the city council, has such an interest in abating the public nuisance in the street as to entitle it to raise the point in the condemnation proceeding that the company has no franchise to use the street.

Certiorari to review an order of the superior court for Benton county, Holcomb, J., entered April 6, 1910, adjudging a public use in condemnation proceedings, after a hearing before the court. Reversed.

*Moulton & Henderson* (*B. S. Grosscup* and *Cain & Hurspool*, of counsel), for relators.

*Danson & Williams* and *Linn & Boyle*, for respondent.

CROW, J.—The North Coast Railroad Company, a public service corporation, commenced proceedings in the superior court of Benton county to condemn the interests of Norbert R. Sylvester and Margaret M. Rankans in the north thirty feet of Front street, in Kennewick, Washington. The trial judge entered an order adjudging a public necessity and use.

[1]Reported in 111 Pac. 19.

The defendants applied to this court for a writ of certiorari, which has been issued, and the order is now before us for review.

The evidence shows that, on January 3, 1907, the town of Kennewick, by Ordinance No. 45, granted the respondent railroad company permission to lay its tracks for its main line over the north thirty feet of Front street, upon which street the relators' lots abut; that sections 11 and 14 of the ordinance read as follows:

"Section 11. The grantee, its successors and assigns, is hereby required to commence the construction of said railroad within 30 days from the date of the publication of this ordinance in the official newspaper of the town of Kennewick, and shall carry on the operation of such construction to as speedy completion as the nature of the work shall permit and complete said road and run and operate trains upon same through the town of Kennewick, between North Yakima and the Columbia river, in the state of Washington, within fifteen months, and bridge the Columbia river east of the town of Kennewick within 30 months thereafter."

"Section 14. The grantee shall file a written acceptance of this ordinance with the town clerk of the town of Kennewick, within thirty days after the publication of said ordinance in the official newspaper of the town of Kennewick;"

that the ordinance was published on January 11, 1907; that written acceptance was not filed by the respondent within thirty days after its publication, but that an acceptance, not shown to have been filed, was prepared by respondent on February 19, 1907; that on August 2, 1909, the town council of Kennewick, in regular session, adopted a resolution declaring that the North Coast Railroad Company had forfeited its right or franchise to occupy the street; that no construction work was commenced on Front street by respondent prior to February 26, 1910, on which date the respondent, after dark on Saturday evening, entered upon the street and commenced laying its tracks; that respondent was stopped by injunction proceedings; that later, upon suspension of the injunction, one track was completed, and that

this proceeding was commenced on March 8, 1910, to condemn such interests or property rights as the relators hold in the street upon which their lots abutted, and to compensate them for such damages as they might sustain. Other facts not material to be now mentioned were also shown, in regard to another main line through Kennewick adopted by respondent, and an alleged abandonment of the franchise above mentioned.

Some contention is made by the relators to the effect that the franchise ordinance was not passed in the manner required by law, but we will not consider that question, our view being that a forfeiture has been declared by the town council.

"Before a railroad company can lawfully occupy a street, it must have authority to do so from the legislature, or from some municipal corporation having power to grant it. A railroad cannot occupy a street under its general authority to make a location, but such right must be expressly granted or necessarily implied." 1 Lewis, Eminent Domain (3d ed.), § 169.

If respondent has failed to comply with the conditions of the ordinance within the time therein limited, and if a forfeiture has been legally declared by the council, it is apparent that respondent has no franchise in the street. Respondent contends that the franchise has not been legally forfeited. It is true that no ordinance repealing the former ordinance, or purporting to forfeit the franchise, has been passed, but a resolution declaring a forfeiture was adopted by the council, and thereafter notice of such forfeiture was promptly transmitted to the respondent. Our attention has not been directed to any statute or charter provision requiring that a forfeiture be declared by ordinance. When no particular mode of action has been prescribed by the legislature, or a city charter, any authorized action of a municipality may be taken by resolution, as well as by ordinance. A resolution ordinarily has the same effect as an ordinance, except in matters of legislation. *Ehrhardt v. Seattle,* 33 Wash. 664, 74

Pac. 827; *State ex rel. Jones v. Superior Court*, 44 Wash. 476, 87 Pac. 521; *Steenerson v. Fontaine*, 106 Minn. 225, 119 N. W. 400; *City of Crawfordsville v. Braden*, 130 Ind. 149, 28 N. E. 849, 30 Am. St. 214, 14 L. R. A. 268; *McGavock v. Omaha*, 40 Neb. 64, 58 N. W. 543; *Atchison Board of Education v. DeKay*, 148 U. S. 591. The respondent did not comply with the requirements of the ordinance within the time limited. The council, by resolution, declared a forfeiture, and gave notice of its action. We think the respondent thereafter had no franchise which authorized it to construct its line of road upon Front street.

The respondent, however, contends that, even though there has been a forfeiture, the relators cannot urge the same, nor can they urge the fact that respondent now has no franchise, as a defense to this action. It further insists that its right in an eminent domain proceeding to ascertain and pay damages, which owners of abutting property will sustain by reason of its occupation and use of the street, exists even though it has not yet obtained a franchise. It is true that in *State ex rel. Merriam v. Superior Court*, 55 Wash. 64, 104 Pac. 148, cited by respondent, this court, citing previous decisions, said:

"It is argued that, because the city has not granted a right of way to the condemning company across streets adjoining the property in question, therefore this property may not be condemned. This question was settled adversely to the same contention in *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198, and *State ex rel. Hulme v. Grays Harbor & Puget Sound R. Co.*, 54 Wash. 530, 103 Pac. 809."

In the *Merriam* case, and the other cases therein cited, each public service corporation was seeking a condemnation, appropriation, and physical taking of the real estate itself. In this action the respondent seeks by condemnation to obtain the right to damage property of the relators by occupying the street upon which it abuts, and to do so after a franchise previously granted has been actually forfeited by the town coun-

cil. Respondent entered upon the street wrongfully and without lawful authority. In so doing it created, and is now maintaining, a public nuisance.

In *Birmingham R. L. & P. Co. v. Moran*, 151 Ala. 187, 44 South. 152, 125 Am. St. 21, the court said:

"It is settled law that a railroad, constructed and operated on the streets and alleys of a city without authority of law, constitutes a public nuisance, as does also the erection of a fence and gate across any such street or alley. It is also settled law that a public nuisance may be abated or enjoined by an individual property owner who suffers injury thereby of a special nature, separate and distinct from that which the public generally sustains: 27 Am. & Eng. Ency. of Law (2d ed.), 176; Elliott on Roads and Streets, p. 500; *Louisville & N. R. R. v. Mobile J. & K. C. R. R.*, 124 Ala. 162, 166, 26 South. 895; *Weiss v. Taylor*, 144 Ala. 440, 466, 39 South. 519."

Mr. Elliott, in his work on Roads and Streets (2d ed.), at § 877, says:

"It is substantially agreed by the courts that the abutter has a private interest in the road or street as such, and if he has this right it is property which cannot be taken from him without compensation. The right to a road or street which the land-owner possesses as one of the public is different from that which vests in him as an adjoining proprietor, and it is also distinct and different from his rights as owner of the servient estate. The right which an abutter enjoys as one of the public and in common with other citizens is not property in such a sense as to entitle him to compensation on the discontinuance of the road or street; but with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property it is radically different, for this right is a special one."

In *Brazell v. Seattle*, 55 Wash. 180, 104 Pac. 155, this court said:

"The right of the owner of a city lot to use the adjoining street to its full width is well established, unquestioned, and one of which he cannot be deprived without just compensation. It is as much a property right as the lot itself. . . .

Abutting owners who are deprived of the right to enjoy the street to its full width immediately in front of their property, being specially injured, are entitled to equitable relief by injunction. The ordinary and well-established rule that owners who are only remotely affected or who sustain no special injury different from that sustained by others in the vicinity, are not entitled to equitable relief, does not apply to them, nor does it deprive them of their right to seek protection in their individual capacity."

The situation before us is that the respondent has created a public nuisance in the street immediately in front of relators' property, which does them a special injury, and which they would be entitled to abate by proper legal proceedings. It has no franchise, but occupies the street wrongfully. By condemnation it is now seeking a judgment which it would ultimately plead as an estoppel or defense in any action instituted by relators to abate the public nuisance which it has created. Rights of public service corporations, asserted under eminent domain laws, should be strictly construed, and we are not prepared to hold that such a corporation, by invoking the power of eminent domain, may deprive a property owner of his right to abate a public nuisance. The rule upon which respondent relies, as announced in *State ex rel. Merriam v. Superior Court*, and *State ex rel. Hulme v. Grays Harbor & Puget Sound R. Co.*, is predicated entirely upon *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.*, 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198, upon which respondent also relies. In the latter case, after referring to and commenting upon the fact that the corporation was diligently proceeding to obtain a franchise, this court, at page 638, said:

"We think that, when it is made to appear that a promoter of an enterprise of this kind is proceeding diligently with it, and nothing is shown to have occurred that will prevent its ultimate accomplishment, that the court ought not to deny the right to acquire by condemnation an essential part merely because there is a possibility that the enterprise cannot be carried to completion."

In this case occurrences have been shown which directly tend to prevent the ultimate accomplishment of respondent's design. The franchise heretofore granted has been forfeited by affirmative action of the council, and in the absence of any later municipal action, we must presume that no additional franchise will in all probability be hereafter granted.

We are not inclined to extend the application of the rule heretofore announced in the cases cited. When one franchise has been forfeited there can be no hardship in requiring a public service corporation to secure a new franchise over a public street within the territory of a municipal corporation, before it is permitted to take possession of such street and condemn the interests of an abutting property owner. Such a rule will prevent a resort to the arbitrary methods by which the respondent has in this case obtained possession of Front street, without any franchise or authority of law, and now seeks to maintain the same. If by this attempted condemnation respondent is permitted to estop the relators from abating the public nuisance it has created and is now maintaining, it will obtain judicial sanction for acts which in their inception were arbitrary and unlawful. No such sanction should be permitted, and we hold that, by reason of the situation here presented, the relators, as a defense herein, are entitled to urge that the franchise heretofore granted has been forfeited by the municipality, and that the respondent has, without authority of law, entered upon the street and created a public nuisance. Relators will then be in a position to enjoin the public nuisance which the respondent has created by arbitrarily and clandestinely entering upon the street after a legal forfeiture of its franchise has been declared.

The judgment is reversed, and the cause remanded with instructions to dismiss the petition.

Rudkin, C. J., Parker, Dunbar, and Mount, JJ., concur.