[No. 10015.   Department One.   January 25, 1912.]

THE STATE OF WASHINGTON, *on the Relation of Georgiana S. Ford et al., Plaintiff*, v. THE SUPERIOR COURT FOR THURSTON COUNTY *et al., Respondents*.[1]

MUNICIPAL CORPORATIONS—CONTROL OF STREETS—EXCLUSIVE FRANCHISE—STREET RAILWAYS. Rem. & Bal. Code, § 9080, providing that a city may grant authority for the construction of electric railways upon, over, along and across any public street and prescribe the grade or elevation at which the same shall be maintained, authorizes the city, by clear and unmistakable language, to grant a franchise giving a street railway company the right to build a track on a trestle in a portion of the street, excluding the public therefrom, upon condemnation of the abutter's easements of access, light, and air, under Id., § 9081.

Certiorari to review an order of the superior court for Thurston county, Mitchell, J., entered October 25, 1911, adjudging a public use and necessity in condemnation proceedings, after a hearing before the court.   Affirmed.

*G. C. Israel, Frank C. Owings*, and *Thos. L. O'Leary*, for relators.

*Troy & Sturdevant* and *A. J. Falknor*, for respondents.

GOSE, J.—This is an application for a writ to review a judgment of necessity entered in an eminent domain proceeding.   The respondent Olympia Light & Power Company has for several years operated an electric street railway system in the city of Olympia, and between that city and Tumwater.   On the 5th day of May, 1911, the city of Olympia granted it a franchise to extend its railway system to what is known as West Olympia.   The ordinance provides:

"That said Olympia Light & Power Company is hereby authorized to erect a trestle to carry its tracks over the Port Townsend & Southern Railroad, said trestle to be located on the southerly side of Fourth street, and to extend from

[1]Reported in 120 Pac. 514.

a point at or near the drawbridge to a point at or near the intersection of Fourth and Front streets. Plans and detailed specifications for said trestle to be approved by the city engineer and the city council, and said trestle to be constructed in accordance therewith."

Pursuant to the franchise, the respondent, while taking the initial steps to construct the trestle, was enjoined by the court from constructing it, until it had appropriated the easements of access, light, and air of the relators. Thereafter, in a suit instituted by the respondent for that purpose, an order was entered declaring, that the proposed trestle was necessary, that the public interest required its construction, and that the easements of access, light, and air sought to be appropriated were necessary in the prosecution of the enterprise. The relators thereupon applied to this court for a writ of review. The proposed trestle will commence north of the sidewalk area on the south side of Fourth street, at or near the east end of the drawbridge, and extend west a distance of six hundred and forty feet, to a point near the intersection of Fourth and Front streets. Where it crosses the track of the Port Townsend & Southern railway, it will have a height of twenty-two and thirty-six hundredths feet. From thence to the point of contact with the street, it will have an ascending grade of approximately three per cent. The base of the trestle will have a width of sixteen feet at the east side of the relators' property, and ten feet at its point of contact with the street near the west line of their property. The top of the trestle will be ten feet in width. The driveway in the street north of their property will vary in width from twenty-seven and two-tenths feet, at their east line, to thirty feet at the west end of the trestle. The relators' property lies between the track of the Port Townsend & Southern Railway Company and Front street, and abuts upon the south side of Fourth street. There will be no interference with the sidewalk area. The purpose of the trestle is two-fold; (1) to avoid a grade crossing at the

railway track; and (2) to give the street car track a better
grade between that track and the west end of the trestle.
The railroad track lies in a depression between the draw-
bridge and the west Fourth street hill. West Fourth street
in front of the relators' property has a grade of approxi-
mately twelve per cent.

The relators' contention is that the city did not have the
power to authorize the construction of the trestle or to per-
mit the laying of the street car track except at grade. Re-
spondent contends that express authority for the granting of
the franchise, including the construction of the trestle, is
conferred by the provisions of Rem. & Bal. Code, §§ 9080
and 9081. Section 9080, so far as applicable to the present
inquiry, is as follows:

"The legislative authority of the city or town having con-
trol of any public street or road, or where such street or road
is not within the limits of any incorporated city or town,
then the board of county commissioners wherein such road
or street is situated, may grant authority for the construc-
tion, maintenance and operation of electric railroads or rail-
ways, motor railroads or railways and railroads and railways
of which the motive power is any power other than steam,
together with such poles, wires and other appurtenances
upon, over, along and across any such public street or road
and in granting such authority the legislative authority of
such city or town or the board of county commissioners, as
the case may be, may prescribe the terms and conditions on
which such railroads or railways and their appurtenances
shall be constructed, maintained and operated upon, over,
along and across such road or street, and the grade or ele-
vation at which the same shall be maintained and operated."

Section 9081 confers the right upon railway companies
operated by electricity to appropriate "real estate and other
property for right of way or for any corporate purpose,"
subject to the condition that the right of eminent domain
cannot be exercised with respect to any public road or street
until the location of the road has been authorized in accord-
ance with the provisions of § 9080.

Relators rely upon *State ex rel. Schade Brewing Co. v. Superior Court*, 62 Wash. 96, 113 Pac. 576. In that case we held, after reviewing the legislation applicable to commercial railroads, that the city of Spokane had no authority to grant a franchise to a commercial railroad to lay its track below the grade of the street so as to exclude the public from the part of the street occupied by the railroad. The statute under review in that case gives to cities of the first class the power to authorize the construction and operation of commercial railroads "in, along, over or across" any street, etc., and to prescribe the "duration and condition" of such use. *Delaware, L. & W. R. Co. v. Buffalo*, 158 N. Y. 266, 53 N. E. 44, and *Lake Shore & M. S. R. Co. v. Elyria*, 69 Ohio St. 414, 69 N. E. 738, are quoted from at length in the opinion in the *Schade* case. These are cases involving the right of commercial railroads to place piers and abutments in the street. In the *Buffalo* case the legislative authority was to construct roads "across, along, or upon" any street with the assent of the municipal authorities. In the *Elyria* case the statute relied upon as conferring the power provided:

"If it be necessary, in the location of any part of a railroad, to occupy any public road, street, alley, way, or ground of any kind, or any part thereof, the municipal or other corporation, or public officers or authorities, owning or having charge thereof, and the company, may agree upon the manner, terms, and conditions upon which the same may be used or occupied."

The rule announced in the *Schade* case is that the power of the municipal authorities to permit the exclusive use of any part of its street by a railroad must be granted by the state, by "clear and unmistakable language." In the *Buffalo* case it is said that the authority of the city must appear "in express terms or by clear and unmistakable implication." In the *Elyria* case the court said that the authority of a municipality to grant more than a joint occupancy of the

way "required clear and express language in the statute to that effect."

It is not questioned that the state, in the exercise of its sovereignty, may confer upon municipal officers the power to permit either a street railway company or a commercial railroad to construct its track either above or below the grade of the street, and thus destroy the common public user of the portion of the street thus occupied. The question here presented is, has the legislature conferred this power upon the city of Olympia, to quote from the *Schade* case, by "clear and unmistakable language." We think it has. Any other construction would, we think, nullify the plain meaning of the words "and the grade or elevation at which the same shall be maintained or operated." The statute gives authority to the law-making power of the city to grant the right to construct, maintain, and operate electric railways and railroads having other than steam power, "upon, over, along and across" any public street, to prescribe "the terms and conditions" of their construction, maintenance and operation "upon, over, along and across" the street, and to prescribe "the grade or elevation at which the same shall be maintained or operated." If the legislature did not intend to authorize the city authorities, in the judicious exercise of the powers conferred upon them, to authorize the construction of a railway track at least above grade, the word "elevation" is surplusage and must be rejected and read out of the statute. It seems clear that the legislature contemplated that the contour of a street might be such that the public safety would require the road to be constructed and operated above grade. The construction contended for by the relators would, we think, render the meaning of the words "grade or elevation" meaningless. It is the duty of the courts in construing statutes to give effect to all the words found in the statute, if possible, and as was said in the recent case of *State v. Whitney*, 66 Wash. 473, 120 Pac. 116, to neither en-

large the terms of the statute by ingenious reasoning, nor diminish them by strained construction.

The relators say: "The conferring of the power to prescribe the grade or elevation simply means that the legislature has said to the city council that you may have the power and authority to protect the inhabitants of the city whom you represent officially against any public service corporation attempting to fix its line at an improper grade or elevation." This argument is hardly in harmony with the contention that the city had no power to permit the construction of the road except upon the surface of the street. Moreover, such authority had already been conferred upon the council by the use of the words "upon, over, along and across," and by the further provision giving it the power to prescribe "the terms and conditions" upon which such roads shall be constructed, maintained, and operated. If the law-making body of the state had intended that street car tracks could only be laid level with the surface of the streets, and in conformity with the grades then or thereafter established, we think such intention would have been expressed in words reasonably tending to convey that meaning. We think, construing the statute according to the plain and ordinary meaning of the words employed, the city was warranted in requiring a grade separation. In the *Schade* case we said: "We are not concerned here with the right of any public service corporation save that of a railway company." In that case, we were dealing with the rights of a commercial railway, and the language there used must be read in the light of that fact. As was said by Chief Justice Marshall, in *Cohens v. Virginia*, 6 Wheat., at page 399:

"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. . . . The reason of the maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but

their possible bearing on all other cases is seldom completely investigated."

We are prompted to make these suggestions because we have not considered the respondent's further contention that the power of condemnation given to street railway companies by the provisions of § 9081 carries with it, by necessary implication, the power to destroy the right of common public user in the portion of the street to be occupied by the railway company. It was argued at the bar by the respondent that an abutting owner cannot claim compensation where a street car track is laid upon a level with the street grade, and that it follows that the authority given to street railway companies to exercise the right of eminent domain in the streets necessarily implies the right—the city assenting—to separate the track from the street grade. It is, of course, not questioned that street railways facilitate street travel, and that commercial railways are not designed or operated for that purpose. Finding express power in the statute for the franchise as granted, we do not find it necessary to decide this question.

The writ is denied.

DUNBAR, C. J., CROW, and PARKER, JJ., concur.

CHADWICK, J. (concurring)—I concur in the result, upon the second ground stated in the opinion but not decided by the majority. I am led to take this view because of the fact that it is only in cases of grade separation that an abutting owner is entitled to damages. In view of this fact, the right of condemnation conferred by Rem. & Bal. Code, § 9081 would be rendered meaningless if it did not carry with it the power to permit the precise condition presented by the case at bar. The *Schade* case has been properly distinguished by Judge Gose. The company there involved was a steam railroad, and the decision was correct. But in arriving at its conclusion, I think the court must have overlooked the distinction which Judge Gose has pointed out, and used ex-

pressions which were calculated to mislead, and which have in fact encouraged this proceeding. In the *Schade* case will be found the following broad statement:

"It seems to us that a railway company given the use of a public street, under the powers of the city council here invoked, must be given that use, if it is to occupy any of the surface of the street, upon substantially the same terms as any other traveler upon such street may use it; that is, a free passage along the portion of the street surface so granted, when it is not in the actual use of some other traveler."

This expression is inadvertent, and as I read the cases, is not sustained by reason or authority. Under its general police power, a city can, if the safety or welfare of the citizen demands it, say that a part of a street shall be given up to pedestrians, and a part to vehicles; that certain vehicles shall not go upon certain streets; or, as was held in the New York Elevated Railway cases, a grade separation may be ordained. While rights in a street are, as between the pedestrian and the vehicle—be it street car, wagon, or automobile—mutual, the city may, for the safety of either, or the convenience of the general public, give over a part of the street to one class, although technically it may seem that the use is exclusive. The remedy of the abutting owner is to take his damages.