[No. 19354.  *En Banc.*  September 2, 1925.]

THE STATE OF WASHINGTON, *on the Relation of the Northern Pacific Railway Company, Plaintiff,* v. THE SUPERIOR COURT FOR MASON COUNTY, *D. F. Wright, Judge, Respondent.*[1]

EMINENT DOMAIN (30)—POWER TO CONDEMN—PROPERTY DEVOTED TO PUBLIC USE—PARKS—PARTIES ENTITLED TO OBJECT.  In condemnation by a railroad for a right of way through a public park, the dedicator of the park, though he has only a reversionary interest, may contest the proceedings on the ground that the land is already put to a public use, notwithstanding the city has granted the company a franchise and right of way, subject to the reversionary interest.

SAME (30)—PROPERTY SUBJECT—PUBLIC PARK—INCONSISTENT USE. The use of a railroad right of way through a public park is inconsistent with the public use to which the park is already devoted.

SAME (30)—PUBLIC PARK—AREA TAKEN.  The condemnation of one quarter of an acre of a public park for railroad right of way is not so inconsequential as to be no objection to the taking of land already devoted to a public use.

MUNICIPAL CORPORATIONS (360, 365)—FRANCHISE—POWER TO GRANT—PROPERTY DEDICATED FOR PUBLIC USE—STATUTES.  In the absence of statute, a town has no authority to grant a franchise for a railroad right of way through a park, dedicated and held for park purposes only; and Rem. Comp. Stat., § 9175, authorizing a town to receive, control, and dispose of property does not apply to property acquired in trust for specially designated uses.

Certiorari to review an order of the superior court for Mason county, Wright, J., entered May 5, 1925, dismissing proceedings to condemn property for a railroad right of way, after a hearing before the court. Affirmed.

*Geo. T. Reid* and *C. H. Winders,* for relator.

*Frank C. Owings,* for respondent.

[1] Reported in 238 Pac. 985.

FULLERTON, J.—In the year 1921, the Kneeland Investment Company, a corporation, being then the owner of certain described lands situated in the town of Shelton, in Mason county, deeded the lands to the town to be used by it "for public park purposes;" the conveyance being made "upon the express condition subsequent that in the event that the property conveyed is put to any other or different use than that of a public park, the same shall forthwith, without further action on the part of any one, revert to and become the property of the grantor." The town, by its proper authorities, accepted the conveyance and assumed control of and dominion over the property. In the year 1924, the Northern Pacific Railway Company, desiring to extend what is known as the Elma branch of its railroad from its terminus at Stimson, in Mason county, to and into the corporate limits of the town of Shelton, selected, surveyed and definitely located the line of the proposed extension. The line as located passes over the northerly side of the land before mentioned and takes therefrom some twenty-six one-hundredths of an acre. The railway company applied to and obtained from the town council of the town of Shelton a franchise authorizing it to extend the road over the land; the town, however, subjected the grant to the following conditions:

"Provided that this grant of franchise through Kneeland Park shall not become effective, or shall not be construed, considered or acted upon as a franchise until the Kneeland Investment Company, its successors or assigns, or successors in interest, shall have approved this franchise through Kneeland Park or released and relieved the Town from any and all liability because of the granting of this franchise through Kneeland Park, or shall have agreed that the granting of this franchise, through Kneeland Park, does not violate the terms and conditions of the deed or deeds exe-

cuted by the said Kneeland Investment Company, whereby the Town of Shelton holds title for public park purposes to the said Kneeland Park, or until the Northern Pacific Railway Company shall have condemned the reversionary interest of the Kneeland Investment Company therein.''

The Kneeland Investment Company refused to assent to the taking, whereupon the railway company began an action in the superior court of Mason county to condemn its interest in the land. The investment company resisted the action, and the court, at the conclusion of the hearing for the preliminary order of public use and necessity, held that the land was not subject to condemnation at the suit of the railway company, and dismissed the action. The railway company, as relator, by a writ of review sued out of this court, seeks a reversal of the order of dismissal.

The defendant Kneeland Investment Company did not, in the trial court, nor does it in this court, question the regularity of the proceedings by which the relator sought to acquire the right to extend its lines, nor does it question that the acquisition of this particular land is reasonably necessary to the uses of the relator in making such extension. Its contention is that the land is already devoted to a public use, that the use the railway company proposes to make of the land is inconsistent with that use, that the use of the land as a right of way for a railroad is not paramount to its use as a public park, and that land devoted to use as a public park cannot for that reason be taken for use as a right of way for a railroad—at least, not without special statutory authorization, and that here there is no such statutory authorization.

The relator first contends that the question the defendant here seeks to raise is not open to it; that its interest in the land is a reversionary interest, that such

an interest is private property and thus subject to con-demnation for railroad purposes. Were this the whole of the question involved the principle invoked un-doubtedly would be sound. But, as we view it, this is not such whole. As we said in the somewhat similar case of *State ex rel. Sylvester v. Superior Court*, 64 Wash. 594, 117 Pac. 487:

"The primary question here is as to the right to grant the franchise, not as to the right to exercise the power of eminent domain."

In other words, if it is beyond the power of relator to acquire the land for railway purposes, it cannot condemn as against the defendant. The relator, to con-demn at all, must condemn for a public use. It cannot condemn if the effect of the condemnation is merely to transfer the reversionary interest of the relator to itself. This would be to allow it to take private prop-erty by condemnation for a private use. When, there-fore, a public corporation, or quasi-public corporation, seeks to acquire the private property of another, that other may always inquire as to the use the condemnor may make of the property. He has an interest in the property superior in right to the interest of any other, save only the interest of one empowered by law to take it for a public use, and this interest gives him the right to question the use the party condemning can make of the property.

The question is not entirely new in this court. In a number of cases we have recognized the right of the owner of property abutting upon a public street to question in a condemnation proceeding the power of a railroad company to use the street for railroad pur-poses; and this, notwithstanding the railway company had a purported franchise granted by the city author-ities to so use it. *State ex rel. Sylvester v. Superior*

*Court,* 60 Wash. 279, 111 Pac. 19; *State ex rel. Schade
Brewing Co. v. Superior Court,* 62 Wash. 96, 113 Pac.
576; *State ex rel. Sylvester v. Superior Court,* 64
Wash. 594, 117 Pac. 487; *State ex rel. Ford v. Superior
Court,* 67 Wash. 10, 120 Pac. 514; *Detamore v. Hindley,*
83 Wash. 322, 145 Pac. 462.

In the second of the cited cases, this language was
used:

"It is at once apparent that the right of the rail-
way company to condemn the property rights of the
relator depend upon the right of the railway company
to occupy the avenue in the manner proposed, as
against the public. If the railway company has not
acquired by lawful grant the right to occupy the ave-
nue in this exclusive manner as against the right of
the public to use it as a street, then it follows that the
railway company cannot acquire the relator's rights
therein as an abutting owner by eminent domain pro-
ceedings."

In *State v. Superior Court,* 91 Wash. 454, 157 Pac.
1097, a railroad company sought to condemn for rail-
road uses certain tide lands lying within the corporate
limits of the city of Port Townsend, platted and dedi-
cated to public use as waterways. The city consented
to the proceedings. The state, by its *Attorney General,*
resisted the proceedings, one of the grounds being that
the property, since it was dedicated to a public use,
was not subject to condemnation for another and in-
consistent public use. The railroad contended that the
state had no such interest in the property as to au-
thorize it to make the objection. We held to the con-
trary, saying in substance that the ways were public
highways dedicated to the use of the public, and that
a city had no power under the statutes to grant to a
railway company the right to use such highways to
the exclusion of the public.

The principle involved in the cited cases is analogous to the principle involved in the present case. The defendant is not only the owner of the reversionary interest, but it is the dedicator of the property. The use for which. the property is dedicated is a public use, and we think it has such a special interest in the property as to authorize it to question the power of any one to take it for uses inconsistent with the use for which it is dedicated.

The cases cited from this court as maintaining a contrary view we cannot concede are to the point. The most pertinent of them are *State ex rel. Trimble v. Superior Court,* 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897, and *State ex rel. Harlan v. Centralia-Chehalis Elec. R. & P. Co.,* 42 Wash. 632, 85 Pac. 344, 7 L. R. A. (N. S.) 198. In the first, the relator held a contract of purchase from the state for certain tide land, and the suit was brought to condemn the interest thereby acquired. It was objected that the state had an interest in the property, that this interest had not been acquired and could not be acquired against the will of the state. We held that this did not constitute a defense to the proceedings, resting the holding on the ground

"   . . .   that the relators must be regarded as the real owners of the lots in question, subject only to the right of re-entry and forfeiture on the part of the state in the event of a failure on their part, or that of their successors or assigns, to pay the balance of the purchase price according to the terms of the state's contract."

Plainly, there was here no determination of the question involved in the present proceedings; on the contrary, the holding is in substance that it was not involved.

In the second of the cited cases, the proceeding was to condemn wholly private property, in which neither

the state nor the general public had an interest. The purpose for which the condemnor was incorporated was to build, equip and operate electric street railways in the cities of Chehalis and Centralia, and an electric railway between those cities. The owner of the property objected to the condemnation proceedings because it appeared that the condemnor had not procured a franchise from either of the cities named authorizing it to operate therein. We declined to accede to the objection, basing our conclusion on the ground that nothing appeared to show that the franchises could not be acquired, and that it did not appear otherwise that the enterprise could not be carried to fruition. It was not determined that the objection was not open to the owner. Indeed, the inference is the other way, as the entire argument of the court proceeds on the theory that the objection was material if well founded.

The next contention of the relator is that the uses to which it purposes to put the property are not inconsistent with its use as a public park. In so far as the remainder of the property is concerned, after this part has been taken from it, this claim is undoubtedly well founded. But as to the part taken, the use is an inconsistent use. A public park has been defined as a pleasure ground set apart for the recreation of the public, to promote its health and enjoyment. Clearly, any part of it over which a railway extends is useless for this purpose. But the inquiry need not be pursued. The great weight of judicial opinion is to the effect that the uses are inconsistent. For a collection of the cases, see 18 A. L. R. 1249.

Nor can we concur in the suggestion that the land taken is so inconsequential as to be beneath the notice of the law. A quarter of an acre of land is not inconsiderable even for uses as a public park, but, more than this, we cannot think the principle involved in the

maxim invoked is applicable to the situation presented. If this particular part of the tract may be taken because it is small, so may another part of equal size be taken for the same reason, and the taking may continue until the entire tract is absorbed. The law refuses to take notice of trifles only where nothing but trifles are involved. If the principle involved in the trifle may lead to consequential results, the law will give the same notice to a trifle that it will give to more considerable matters.

The remaining question is, did the franchise granted by the town authorize the relator to take the property for railroad purposes. In considering the question, it must be remembered that the property is in no sense the absolute property of the town of Shelton. It does not hold it with the same title that it holds property acquired for general municipal purposes; but, on the contrary, holds it in trust for a particular purpose, and is without power to devote it to general municipal uses, or uses other than those defined in the grant by which its interest was acquired. With reference to the property, it is a trustee of an express trust, and the people of the town, for whose benefit it was dedicated, are the *cestuis que trustent*.

It is the consensus of authority that the legislature may confer on a municipality power to devote property it holds in a trust capacity for a particular use to uses in addition to, and inconsistent with, the use for which it acquired it. But the authorities are equally uniform that the power must be specially conferred, either by express grant or by necessary implication arising from an express grant, and is not conferred by a general grant empowering the municipality to acquire, hold, and dispose of property. These principles have been recognized by this court in the cases above cited, particularly in the cases of *State ex rel. Schade Brewing*

*Co. v. Superior Court,* 62 Wash. 96, 113 Pac. 576;
*State ex rel. Sylvester v. Superior Court,* 64 Wash. 594,
117 Pac. 487; and *State v. Superior Court,* 91 Wash.
454, 157 Pac. 1097. In the first of these cases, the city
of Spokane sought by franchise to authorize a railway
company to occupy a street of the city to the exclusion
of the public therefrom. It was held that this power
was not conferred either by the general act of the
legislature empowering the railway company to ap-
propriate any part of a public road or street for rail-
way purposes, or by the acts relating to municipal cor-
porations authorizing a city to grant to a railway
company the right to use its streets. In the second of
the cases, the rule was recognized, but it was said that
the governing statute in that instance did expressly
confer such authority. In the third of the cited cases,
this language was used:

"If, however, we have mistaken counsel's meaning
and it be that they mean to assert that the statute is
broad enough to permit the condemnation for railway
purposes of any property of the state, other than the
specifically exempted part, we cannot agree with the
contention. As is well known, the state holds title to
property in two entirely distinct capacities, the one a
proprietary capacity, as individuals generally hold
property, and the other a governmental capacity, that
is, in trust for the public use. The rule, therefore, is
that a statute conferring upon the state or other
municipal corporation the general authority to sell, or
a statute conferring the right to condemn state or other
municipal property generally, will, in the absence of
express words to the contrary, be confined to such
property as it holds in its proprietary character. This
principle we announced in the case of *Samish Boom
Co. v. Callvert,* 27 Wash. 611, 68 Pac. 367, in the fol-
lowing language:

" 'The rule is that, whenever a tract of public land
is once legally appropriated to any purpose, from that
moment the land thus appropriated becomes severed

from the mass of public land, so that authority to sell in general terms will not be construed to embrace or operate upon it, although no reservation is made of it.'

"So, also, in *State v. Whitney*, 66 Wash. 473, 120 Pac. 116, where we quoted with approval from the case of *Wilcox v. Jackson*, 13 Pet. 498, the following:

" 'We go further, and say, that whensoever a tract of land shall have once been legally appropriated to any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands; and no subsequent law, or proclamation, or sale, would be construed to embrace, or operate upon it; although no reservation were made of it.' "

The same principle was announced in the somewhat recent case of *State ex rel. Cle Elum v. Kittitas County*, 107 Wash. 326, 173 Pac. 698. In that case the county sought to condemn a right of way across property of the city held and used as a site for a reservoir. The lower court allowed a condemnation, but its judgment was reversed on the appeal to this court. In the opinion it was said that it was an elementary rule that the power of a quasi-public corporation or a public corporation to condemn property owned by a municipality does not exist unless clearly created by statute; that "such right must, if it exist, be given expressly," and that there was in our statutes no such express right granted.

The statute cited as applicable in the present instance is found in Rem. Comp. Stat., § 9175, subds. 2 and 17 [P. C. § 837]. These read as follows:

"The council of said town shall have power . . .

"To purchase, lease, or receive such real estate and personal property as may be necessary or proper for municipal purposes, and to control, dispose of and convey the same for the benefit of the town; *Provided,* that they shall not have power to sell or convey any portion of any waterfront.

"To make all such ordinances, by-laws, rules, regulations and resolutions not inconsistent with the constitution and laws of the state of Washington, as may be deemed expedient to maintain the peace, good government and welfare of the town and its trade, commerce and manufactures, and to do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter."

But these provisions of the statute, in our opinion, relate to property which the city acquires for its ordinary municipal purposes, property the title to which it holds in fee and over which it may exercise the rights belonging to and following ownership in fee, and do not relate to property which it acquires in trust for a specifically designated use and purpose, and over which it has only the powers of a trustee. This for the reason that it is a general grant of power with respect to its property, not a special grant with respect to property dedicated to it for a special use or purpose.

Our conclusion is that the town of Shelton has no right of disposition over the property in question, and that the railway company cannot by other means acquire it for railroad purposes. It follows that the judgment of the trial court is right and must be affirmed. It will be so ordered.

TOLMAN, C. J., PARKER, BRIDGES, MACKINTOSH, MITCHELL, and ASKREN, JJ., concur.

HOLCOMB, J. (concurring)—To me there is considerable doubt on all questions involved in this case, and particularly on the right of relator to the remedy. Doubtless, relator has the right to revoke the trust, if the municipality had no right to relinquish any part of it. The *cestuis que trustent,* nor any of them, are here complaining of any violation of the trust. Aside from fraudulent or unlawful violations of the trust to

4—136 WASH.

their injury, the municipality is their lawful agent and trustee, and it would seem that, under the statutory provisions, has general power "to control, dispose of and convey the same for the benefit of the town;" and such a new and important artery of commerce and public utility as this railroad may well be thought, by its governing body, as "for the benefit of the town;" much more so, looking both forwardly and presently, than this very small strip of land off the whole park area, running adjacent and parallel to another strip of land already occupied by a railway which is *not* an artery of commerce.

While these and other suggestions causing me to doubt the correctness and justice of the decision occur to me, I am unable to fortify them by any controlling decisions or texts.

Hence, I am obliged, reluctantly, to concur in the result.