SIMON, Justice.
This is an action for specific performance instituted by the City of New Orleans, seeking to compel the defendant, Louisiana Society for the Prevention of Cruelty to Animals, to comply with its agreement to purchase and take title to a certain area of the property generally known and styled as “Commerce Place”, located within its corporate limits and allegedly owned by it since March 7, 1836.
The record reveals that by Ordinance No. 18,645, adopted on December 1, 1953, the Commission Council of the City of New Orleans authorized the Commissioner of Public Buildings and Parks to advertise for sale and to sell that portion of “Commerce Place” adjacent to Square 1589 and ■“forming the corner of Elysian Fields Avenue and Florida Avenue, as well as the corner of Marigny Street and Florida Avenue, in the Third Municipal District of the City of New Orleans, as shown on plat or survey of city-owned property, made by G. S. Bisso, dated April 12, 1946, and approved by N. L. Marks, Jr., City Engineer.”
On January 6, 1954, the Commissioner of Public Buildings and Parks, upon compliance with the above ordinance, offered to sell the said property at public auction, and the defendant having tendered the highest bid was declared the successful purchaser thereof for the price of $43,415 plus costs of advertising and notarial fees. In compliance with its bid, defendant deposited with the City of New Orleans the required 10% deposit, the sum of $4,341.50.
Upon title to said property being tendered, the defendant refused acceptance thereof, predicating its refusal on the ground that the City did not have nor could it transfer a merchantable title. Hence this suit.
In opposition to plaintiff’s demand, the defendant avers that the City of New Orleans has no recorded deed translative of title, and that its only record of acquisition is its delineation as a public square, namely “Commerce Place”, on a plat or map made in 1833, said plat having been attached to an act of sale dated March 7, 1836, wherein the owner of the property of that particular area sold certain lots and therein recognized the area in question as “Commerce Place.”
Defendant further urges that if there was a legal acquisition of said property by the City, which it denies, it was an acquisition to be owned and held by the City for public use and to be exclusively devoted for the *253 benefit of its inhabitants; and therefore said public park cannot be sold or disposed of for private use without an express grant of legislative authority.
The plaintiff City maintains that, though it has no recorded deed translative of title to the property nor a formal dedication thereof to public use, the public square in question, because of its above-stated designation by the owner and thereafter its acceptance and continued use and maintenance by the City as a public square for the use and benefit of the public, became and is still public property subject to its administration and control. Plaintiff further contends that it enjoys the right of alienating this public property under authority granted by Section 8(1) of the Old City Charter, as amended by Act 378 of 1948, the provisions of which were in effect at the time title thereto was tendered.
In the trial court the matter was submitted on a stipulation of fact, as above analyzed by us; and the trial judge rendered judgment recognizing the City as the owner of said public square with the corresponding right of alienating it for private use, and thereupon ordered the defendant to specifically perform its agreement to purchase. From this judgment defendant has appealed.
We thus have presented to us two legal problems, namely: (1) Whether title to Commerce Place is vested in the City of New Orleans, and (2) whether the City enjoys the power and right to alienate this particular public park for private use.
Although there is no record acquisition of this public square by the City of New Orleans, we are firmly convinced and necessarily conclude, that the title to said public square became vested in the City of New Orleans as public property by dedication in 1836. It manifested its acceptance of the dedication by virtue of its recognition, use and maintenance of the property as a public park for a period of over 100 years until the present.
In the early case of President, Recorder and Trustees of City of Cincinnati v. Lessee of White, 1832, 6 Pet. 431, 8 L.Ed. 452, the Supreme Court of the United States announced the principle that dedications of use were valid without the necessity of a land for charitable, religious and public grantee to whom a fee could be conveyed, recognizing that such dedications constitute the “leaving open” of property for common and public use and for the convenience and accommodation of the inhabitants of a municipality. The court therein also pronounced the doctrine that there is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended.
In the case of Pickett v. Brown, 18 La. Ann. 560, we held:
“ * * * the dedication of property for public uses may be inferred from *255 facts and circumstances, which leave no reasonable doubt upon the mind of the intention of the owner to make such a disposition, * *
See also New Orleans & C. R. Co. v. Town of Carrollton, 3 La.Ann. 282; Town of Carrollton v. Jones, 7 La.Ann. 233; and Municipality No. 2 v. Palfrey, 7 La.Ann. 497.
In Saulet v. City of New Orleans, 1855, 10 La.Ann. 81, we said:
“According to the principles * * *, on which dedications to the public use have been supported, without any grant or deed, it must either appear that the ground has been used with the assent of the owner for public purposes which, in their nature, exclude the idea of private ownership, and for such a length of time, that the public accommodation and private rights would be seriously affected by the interruption of that use, * *
Likewise, in City of Shreveport v. Walpole, 22 La.Ann. 526, we said (Syllabus) :
“No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of land to the public use. All that is required is the assent of the owner of the land, and the fact that it is being used for the purposes intended. * *
We also observe that in the recent case of Richard v. City of New Orleans, 195 La. 898, 197 So. 594, 598, in determining the title of the therein disputed property and its location as shown on a plan of survey, we said:
“ * * * A reference to the map will show also the existence of ‘Commerce Place’ which, today, is treated as a locus publicus. * * * ”
We are next to consider whether the property herein was susceptible of a valid alienation by the City of New Orleans for private use.
Plaintiff readily concedes that, ordinarily in the absence of statutory authority, property forming part of the public domain is inalienable. However, it contends that the required statutory authority necessary to support its right to sell this public square is granted by Section 8(1) as amended by Act 378 of 1948 of the Old City Charter in effect at the time of this transaction, which provides as follows:
“Section 8. The Commission Council shall also have power:
“Public Streets
“(1) To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined, * *
Under the general principles treating with the Division of Things, LSA-Civil *257 Code, Articles 453, 454 and 458 distinguish the various types of public things as follows :
“Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water.
“Hence it follows that every man has a right freely to fish in the rivers, ports, roadsteads, and harbors.” LSA-Civil Code, Article 453.
“Things which are for the common use of a city or other place, as streets and public squares, are likewise public things.” LSA-Civil Code, Article 454.
“Things which belong in common to the inhabitants of cities and other places, are of two kinds:
“Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, and quays.
“And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues.” LSA-Civil Code, Article 458.
In the case of City of Shreveport v. Walpole, supra, in dealing with dedicated property for public use, we said:
“The dedicated property, being held as a public trust, and for public uses, is inalienable by the corporation. It is of that class of property defined in the first clause of article 449 of the Civil Code as ‘common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common, such as the streets, the public walks, the quays.’ ”
See City of New Orleans v. Carrollton Land Co., 131 La. 1092, 60 So. 695.
In the case of McNeil v. Hicks & Howell, 34 La.Ann. 1090, we said:
“The doctrine was early declared by this Court, that a municipal corporation may alienate, or change the use and destination of public places with the consent and by the authorization of the sovereign power first obtained, whenever the public interest may require it. De Armas v. Mayor [etc., of New Orleans], 5 La. 132; Mayor v. Hopkins, 13 La. 326; Mayor v. Leverich, 13 La. 332.” (Italics ours.)
In the case of Parish of West Carroll v. Gaddis, 34 La.Ann. 928, we expounded our views regarding the rights and powers of parishes and municipal corporations to alienate property acquired by them, respectively, and devoted to public service. In recognizing their incidental and implied *259 rights to alienate or dispose of property-held by them, and in distinguishing rights as to public property and property of a private nature, we said:
“ * * * Whatever may be the right of those corporations, in such cases [property real or personal of a private nature] the power could not be extended to instances of property acquired by dedication to public use generally, and devoted to some special purpose, for then the property becomes public property, and cannot be alienated without legislative authority. Dillon, 3d Ed., §§ 574, 575 et seq., and notes.”[1]
In Henderson v. City of Shreveport, 160 La. 360, 107 So. 139, it was held that the police jury could not sell or otherwise dispose of a courthouse site, without express and special authority from the Legislature, because the property having been expressly bought for the purpose of erecting thereon the court building became a public thing, or hors de commerce.
The prohibition against power of a municipality to sell, without express legislative authority, property devoted to public use is based on the theory that such property by its very nature and destination is owned and held by the municipality as a trustee in trust for the use and benefit of the citizens of the municipality; and our law will not permit the municipal corporation to divest itself of the trust, nor to deprive the citizens of their rights as beneficiaries in the common use of the property, unless such action be made by and through express legislative sanction or authority. This theory is further founded on the principle that a municipal corporation is not a legal entity or person whose interest can be considered separate and apart from its people. It can only act as an instrument created and perpetuated for the common welfare of the people. Its officers, as such, are nothing more than agents of the public. In that capacity the scope of their authority can not exceed that which is defined through its creation. It follows that the usual authority and control exercised by a municipality over property used by its inhabitants as public property does not grant to its corporate officers the right to transfer said property to and for private purposes, thereby depriving the public of its use, without express legislative authority.
In line with the above cited authorities and expressions quoted therefrom, we conclude that the general authority “to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined,” embodied *261 in section 8 of the City Charter, supra, and relied upon by the City in its effort to effect a valid' alienation, is not such an express and specific authorization as required by our codal articles and jurisprudence to alienate property designated and treated as locus publicus, the character of “Commerce Place”.
We approve of the following principle :
“ * * * There is authority which seems to support such a broad construction of similar general statutory grants of authority in other states, but we think the sounder view is that enunciated in State ex rel. Northern Pacific Ry. Co. v. Superior Court, 136 Wash. 87, 238 P. 985, wherein the court said it was the consensus of authority that the legislature could authorize a municipality to convey property held in its trust capacity for a particular use, but that it was equally the consensus of opinion that it must be done specially and could not be implied from a general grant of power to acquire, alien and convey. See People ex rel. Lehigh Valley R. Co. v. State Tax Comm., supra [206 App.Div. 549, 202 N.Y.S. 310], and Brooklyn Park Commissioners v. Armstrong, supra [45 N.Y. 234], and also Lewis v. [City of] Providence, 10 R.I. 97.” Buckhout v. City of Newport, 68 R.I. 280, 27 A.2d 317, 322, 141 A.L.R. 1446.
The fact that the City declares this property no longer necessary to the public use as originally destined does not in any manner alter, change or affect the requirements which must be observed and complied with, as above stated, when and if it seeks to alienate public property to private ownership.
For the reasons assigned, the judgment of the lower court is annulled, reversed and set aside, and plaintiff’s suit is hereby dismissed. All costs to be paid by the plaintiff.
HAMITER, J., concurs in the decree.

. “A municipal corporation has no implied or incidental authority to alien, or to dispose of for its benefit property dedicated to or held in trust for the public use or extinguish the public uses in such property * * *.” Dillon on Municipal Corporations, Vol. 3, 5th Ed., § 1102, p. 1758.