LOUISE DELORD SARPY, Wife of D. F. BURTHE, et al. *v.* MUNICIPALITY No. TWO.

Where property has been set apart for public use and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an ɿ stoppel *in pais*, which precludes the original owner from revoking such dedication.

The decisions in *Livaudais* v. *Municipality No. Two*, 16 La. 509 ; *Livaudais* v. *Municipality No. Two*, 5 Ann. 8 ; *Xiques* v. *Bujac*, 7 Ann. 517 ; and *Livaudais* v. *Municipality No Two*, 9th Ann, were based on the principle that the designation on a plan of a space for the erection of an edifice which might be the private property of an individual, or a corporation, could not be considered as a dedication to the public use.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. Roselius, and *V. Burthe*, for plaintiffs and appellants, cited : *Livaudais* v. *Municipality No. Two*, 16 La. 509. *French* v. *New Orleans and Carrollton Railroad Company*, 2 Ann. 87. *New Orleans and Carrollton Railroad Company* v. *Carrollton*, 3 Ann. 282. *Hatch* v. *Arnoult*, 3 Ann. 482. *Livaudais* v. *Municipality No. Two*, 5 Ann. 9. *Town of Carrollton* v. *Jones and Wife.*

*Livingston*, City Attorney, cited : *Gleip* v. *Winter*, 9 La. 153. 18 La. 122. 18 La. 286. 7 Ann. 234. 6 Peters 431. 7 Ann. 233. *Huber* v. *Gazley*, 18 Ohio, 18. 19 La. 63. *Wright* v. *Tuke*, 3 Cust. 290. *Gamble* v. *City of St. Louis*, 12 Miss. 617. *Goopy* v. *City of Alton*, 12 Ill. 29. *Abbott* v. *Mills*. 3 Verm. 521. *State* v. *Colton*, 3 Verm. 530. *State* v. *Trask*, 6 Ver. 365. *Wyman* v. *Mayor of New York*, 4 Wend. 497.

OGDEN, J. The plaintiffs set up title to a portion of ground in the city of New Orleans, known as Tivoli Circle, and also to two strips of ground, each thirty feet wide, the one in the centre of Triton Walk, running from Tivoli Circle to the extremity of Triton Walk, and the other in the centre of Nayades street, and running from Tivoli Circle to the lower limits of Fauburg Saulet. The defence is, that the property was abandoned and dedicated by the ancestors of the plaintiffs and their vendors, to the public use, and that they have been used and enjoyed as *loci publici* for more than thirty years. The New Orleans and Carrollton Railroad Company, in the year 1833, obtained permission from the defendant to build a railroad and run their cars through this property, and having been joined as defendants in the action, they set up the same defence with the city, and allege that they have occupied and enjoyed the premises for the purposes of the railroad, openly, publicly and uninterruptedly, and with the knowledge of the plaintiffs, for more than nineteen years.

To establish the fact of the dedication of this ground to the public use, the defendants produce two plans ; one is a plan executed by B. Lafon, engineer, dated the 8th of July, 1807, on which the premises are designated by, first, a circle, with the words " Place Tivoli" written around it; 2d, a narrow strip of ground in the centre of Nayades street, running from the Circle, on which are the words " Canal de Tivoli" ; 3d, a similar narrow strip in the centre of Triton Walk, with the words written on it, " Canal des Tritons." This plan was executed at the instance of *Armand Duplantier*, who purchased the plantation, out of which the Fauburg Delord was created, from Madame *Delord Sarpy*, the mother of the plaintiffs. He laid the property out into lots, streets, squares, &c., and, after having sold a portion of the lots, he became insolvent,

and, in 1814, his syndics made a retrocession of the unsold portion to his vendor, Madame *Sarpy*. The other plan is one which the plaintiffs in this suit in the year 1827, caused to be deposited in the office of Felix de Armas, notary public, to be annexed to an act of partition of the estate of their mother, executed before that officer. The only difference between that plan and the former one is, that the words written around the Circle are " Place du Tivoli," instead of " Place Tivoli, and that the strip in the middle of Nayades street has nothing over it.

The evidence shows that the mother of the plaintiffs and, after her death, the plaintiffs themselves, sold lots according to their plan. In a sale of two lots to *Jacob Ott*, in 1825, one of the lots is described as " situated at the corner of the street called Cours des Tritons and of the Circular place of Tivoli," and measuring 140 feet 7 inches front on said Cours des Tritons, and 58 feet front on the place of Tivoli. *Ott* testified, as a witness on the trial, that before he purchased, a plan of Tivoli place and the wide streets, was shown to him, and he was then induced to purchase. In another sale made in 1826, to *Andre Durnford*, the property is described as follows : " Un morceau de terre formant un poligone irrégulier situé au Fauburg Delord, dans l'islet compris entre les rues du Camp, Calliope, les Cours de Nayades, la place Tivoli et la rue Delord."

In the act of partition made between the plaintiffs, of the property belonging to the succession of their mother, no mention is made of any claim on their part to the ground which, by the plan annexed to the partition, appeared to have been thus set apart; and that they intended the partition to be a final and definitive one, of all the property in Louisiana belonging to their mother's succession, is evident from a clause in the act, which is in the following words : " Comme il pouvait avoir dans la succession quelques créances à recouvrer et qu'il existe des terres dans l'Etat du Missouri, dont les titres de l'une ne sont pas encore confirmés par le Congrès des Etats Unis, et il est convenu entre les parties, que ces biens demeureront indivis entre elles." It appears that in 1826 or 1827, the city planted trees arround the Circle, and in 1837 they fenced it in. By an ordinance in 1833, they granted permission to the Carrollton Railroad Company to build their road, and run their cars through this property, and it is proved that the strips of land on Triton Walk and Nayades streets, were kept in repair by the city authorities, until the railroad company was established, after which the company kept them in repair.

It does not appear that the plaintiffs ever made any opposition to the exercise by the city of the absolute right of control over these places. The railroad company, under the authority of an Act of the Legislature, and of the permission granted by the city authorities, have ever since the road was built, and are now running their cars through the Circle, and through the strips of ground in the center of Nayades street and Triton Walk. No attempt was ever made by the plaintiffs or by their ancestor to subject this ground to any private use, since the plan of 1807, and until the institution of this suit, forty years afterwards, no one has ever laid claim to it as private property.

The question, and the only one to be decided is, whether these plans, with the contemporaneous acts of the parties, and the long use and enjoyment of the property by the public, without opposition on the part of the plaintiffs, are sufficient evidence of their intention to make a dedication. The true principle of law applicable to this subject, is laid down in the case of *City of Cincinnati*

·v. *The Lessee of White*, 6 Peters, 431, "that where property has been thus set apart for public use, and enjoyed as such, and private and individual rights acquired with reference to it, the law considers it in the nature of an estoppel *in pais,* which precludes the original owner from revoking such dedication." In that case it was held, that the assent of the owner of the land to its being used for public purposes, and the fact of its being so used, and that use continuing for such a length of time, that the public accommodation and private rights might be injured by the interruption of the enjoyment, would be of themselves sufficient evidence of a dedication. In the present case, to arrive at the intention of the parties, we have abundant evidence out of the plans which have given rise to much discussion, as to what meaning should be attached to the words written thereon.

The evidence satisfies our minds that it was the intention of the plaintiffs, and of their mother, that the ground claimed in this suit, should be dedicated to the public use; and we do not rest that conclusion on the plans alone, but we consider the acts of the parties as irreconcileable with any other hypothesis but that of their having made the dedication. How, otherwise, are we to view their having made a partition of the property of their mother, with the plan before them, on which these several pieces of ground are designated, and yet not embracing them in the partition. At that time, the city had not enclosed the Circle, and Nayades street and Triton Walk were not used; there was therefore nothing to prevent them from proceeding to the partition of those parcels of ground as well as of the lots which they divided between them, if in point of fact they considered themselves as the proprietors. The conclusion is not to be avoided, that having made previously sales of lots, recognizing these as public places, in the *boundaries and description of the lots sold,* they no longer claimed the property, but considered it abandoned to the public use, and subsequently acquiesced in the enjoyment of it by the city, for the uses to which it was afterwards subjected.

The counsel for the appellees has contended, that this case is identical in principle with the cases of *Livaudais* v. *Municipality No. Two,* 16 L. R. 509; *Livaudais et al.* v. *Municipality No. Two,* 5th Ann. 8; *Xiques* v. *Bujac,* 7 Ann. 517; and *David & Livaudais* v. *Municipality No. Two,* 9th Annual. There is a striking difference, we think, between those cases and the present one. The case first decided will illustrate that difference. The heirs of *Livaudais* claimed a square of ground which figured on the original plan of Fauburg Annunciation, on which the word " Colysée" was written. This, it was contended on the part of the city, constituted a dedication by the plaintiff's ancestor of the square to a public use. Judge Martin, who delivered the opinion of the court, says: "The word Coliseum is the proper name of an edifice in Rome, originally known as the ' Amphitheatre of Titus,' and that it was originally the private property of the Emperor." He says: " There is no evidence of the alleged dedication *out* of the plan in this case; and none in the plan *out* of the word ' Coliseum.'" He then decides, that there was no dedication, for the reason that the word thus written on the plan, indicated only that the ground was reserved for the erection of a building which might be private property or sold or leased out as such. Judge Martin, in that case, observes : " The obligation which the plaintiff has contracted by the use of the word " Coliseum," might certainly be discharged by the erection of such an edifice. In the meanwhile, he may have lost the right of using the square for

SARPY ET AL.
v.
MUNICIPALITY
No. Two.

any other purpose." The subsequent decisions related to squares reserved on the same place by the same founder for a church and for a market house. These decisions were based on the principle that the designation on a plan of a space for the erection of an edifice, which might be the private property of an individual or a corporation, could not be considered as a dedication to the public use.

That principle has no application in the present case. The words written on the plan of the Fauburg Delord, "Place Tivoli," or "Place du Tivoli," do not convey the idea of a place reserved for an edifice of any kind. Tivoli is the name of a town in Italy, not far from Rome, and was used for its classical associations, as the name by which the "Circle" laid out for the public convenience, was to be distinguished, and in the same sense and with the same design as it is usual to designate the streets and squares of a city, by the names of persons and places, both historical and mythological.

Besides that difference, there is in the present case, full and complete evidence of the dedication out of the plan and resulting from the acts of the parties. In the cases referred to, the city never appropriated the ground to the use indicated by the plan; in the present case, they have done so—and without interruption or opposition, the public have had the use and enjoyment of the property as a public square and as public streets, for many years.

We are unable to perceive any advantage to be derived to the plaintiffs' claim, from the decisions relied on in the cases of *French* v. *Carrollton Railroad Company*, 2 Ann. 87, and *The Town of Carrollton* v. *Jones*, 7th Ann. 233. There is no evidence in the present case, that either the plaintiffs or their ancestors used or exercised any rights of ownership over the strips of land in Nayades streets and Triton Walk, designated as canals. They were probably designed to serve as drains for those wide streets. They have, however, for many years before the institution of this suit, been used by the public, as making part of those streets, and this having been done with the assent of the plaintiffs, as their acts necessarily imply, the dedication for that purpose is sufficiently established.

To deprive the public of the use of these thoroughfares which the former owners have so long ago abandoned, and which all their acts tend to prove, it was their intention to abandon in favor of the public, would be a disappointment of the just hopes and expectations which the acts of the plaintiffs and their ancestor have given rise to, and at the same time a violation of private rights which have sprung up on the faith of those acts.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with costs.

BUCHANAN, J. I prefer to put my concurrence in the decree of the court, exclusively on the ground of the acts of the heirs of Madam *Delord Sarpy*, as amounting to a renunciation of the right of proprietorship in the premises claimed in this suit.