SAULET et al. *v.* THE CITY OF·NEW ORLEANS et al.

To support a dedication of property to the public use, it must appear that the ground has been used with the assent of the owner for public purposes in such a manner as to exclude the idea of private ownership, and for such a length of time that the public accommodation and the rights of individuals would be severely affected by the interruption of that use; or else it must appear unequivocally by some plan or writing; that the owner had made a dedication, to violate which would involve a breach of faith.

APPEAL from the First District Court of New Orleans, *Larue,* J.
*St. Paul* and *Bouney,* for plaintiffs. *Livingston, Griffon* and *Robert,* for defendants and appellants.

OGDEN, J. The plaintiffs, as heirs of *Thomas Saulet,* claim to be the own‑ ers of a triangular lot of ground, comprised between and bounded by Prytanea, Camp and Clio streets. The defendants aver in their answer, that the ground so claimed was laid off as a public street by the plaintiffs' ancestor, and that it has been so used and in the possession of the city for more than thirty years. To establish the dedication of this property to the public use, the defendants also rely on a plan of the Faubourg Saulet, made by B. Lafon, on the 12th of September, 1810, according to which plan they contend, the parcel of ground now claimed is represented as a street. The plan made by Lafon was deposited by *Thomas Saulet,* under whom the plaintiffs claim, in the office of Quinone, a notary public, in New Orleans, in the year 1810. On that plan, the space of ground claimed in this suit, is situated opposite the square No. 23, on which the Female Orphan Asylum has been since erected. That square, as well as the others, which are divided into lots, are colored yellow; but on the plan there is nothing to distinguish the parcel of ground in controversy from the streets; an oblong figure, however, represents a building as then standing, partly on square No. 23, and extending across Clio street on to the space of ground which is now claimed. The lines of Colisée and Prytanea streets, between which the square of the Asylum is situated, being extended beyond Clio street, in the direction of the lower limit of the Faubourg Saulet, come to a point at dis‑ tance from Clio street on the side of Prytanea, of 174 feet 8 inches, and on the side of Colisée or Camp streets, of 185 feet 2 inches, thus forming a piece of ground of irregular dimensions in the shape of a wedge—it is colored yellow, and thus represented on one plan offered in evidence, and on another plan given in evidence by the defendants, showing the wards and squares in accordance with the assessment rolls, but which has no date—it is colored green.

Our first inquiry is, whether there is any proof of dedication from the use which the city has made of this strip of ground with the express or implied assent of the plaintiffs or their ancestor. It does not appear from the evidence that it was ever used as a street, or that the city ever claimed any right to it, until December, 1850, when the council of Municipality No. 2, passed resolu‑ tions directing the lot to be enclosed, and granting permission to the Female Orphan Assylum to use it as a play ground for the children. Up to that time, it had remained vacant, and the public passed over it in crossing from Prytania street to Colisée street. From its situation, it does not appear to have been used as a part of either of those streets, nor does it seem that such use of it

11

SAULET
*v.*
NEW ORLEANS.

was at all necessary for the public accommodation. The fact of its having been enclosed by the city, and converted to private purposes, is conclusive evidence that it was not regarded as a part of the street. The Civil Code, Art. 449, speaks of two kinds of things which belong in common to the inhabitants of cities and other places—1st, "common property to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common, such as the streets, the public walks, the quays; 2d, common property, which though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues." It is evident, that the city has treated this property as belonging to the latter class indicated in this article, and has not considered it common as the streets are for the use of all the inhabitants and even for strangers. The title of the city to property of that kind must be derived in some one of the modes recognized and sanctioned by law; it is only in relation to that kind of common property to the use of which all the inhabitants of a city, and even strangers, are entitled in common, that the exception has been admitted, dispensing with the rules which prevail in private grants, and supporting dedications for public use on the broad principles of equity which in such cases have been considered alone sufficient to prevent a violation of good faith to the public. See the case of *City of Cincinnati* v. *White's Lessee*, 6 Peters Rep. *De Armas et al.* v. *Mayer et al.* 15 L. R.

According to the principles laid down in these cases, on which dedications to the public use have been supported, without any grant or deed, it must either appear that the ground has been used with the assent of the owner for public purposes which, in their nature, exclude the idea of private ownership, and for such a length of time, that the public accommodation and private rights would be seriously affected by the interruption of that use, or the intention of the owners to appropriate the property to such public purposes must be made to appear unequivocally by some plan or writing, manifesting that intention, so as to render it a violation of good faith to the public and to those who have purchased property according to such plan, for the owner to revoke the dedication.

Such intention on the part of the former owner of this property, cannot be said to result necessarily either from the use to which the property has been applied, or from the plan by which the faubourg was laid off—it is probable that from its size, irregular shape and situation, between two streets, the owner attached very little value to this ground at the time, that it was not therefore marked on the plan; but that circumstance alone does not sufficiently indicate an intention to appropriate the ground irrevocably to the public use.

The defence of prescription which is relied on by the city, is not sustained by the evidence, from which it appears that their possession dates back only to the year 1850.

We think the plaintiffs have shown a good title to the property, and that the facts of the case do not sustain the defence set up.

It is therefore ordered and adjudged, that the judgment of the court below be affirmed, with costs.