50 So.2d 498 (1951)
BLOCKER et al.
v.
CITY OF NEW ORLEANS.
No. 19707.
Court of Appeal of Louisiana, Orleans.
January 29, 1951.
James David McNeill and M. E. Culligan, Jr., New Orleans, for appellants.
Henry B. Curtis, City Atty., and Sidney C. Schoenberger, Asst. City Atty., New Orleans, for defendant-appellee.
James O'Niell, Asst. City Atty., New Orleans, for Orleans Parish School Board, intervenor-appellee.
REGAN, Judge.
Plaintiffs, Webster Blocker, John P. Bayer, Jr. and Al Wilke, "citizens" and "taxpayers" *499 of the City of New Orleans, instituted this suit endeavoring to permanently enjoin the defendant, City of New Orleans, from accomplishing the purpose of Ordinance No. 17,799, passed by its Commission Council on April 28, 1950, authorizing its Mayor, on behalf of the defendant, to enter into a notarial act of exchange with the Orleans Parish School Board, whereby the defendant would transfer to the School Board a portion of a playground designated as "Union Square", to be used as the site upon which will be erected a public elementary school, and in consideration of this transfer and in exchange therefor, the Orleans Parish School Board would convey to defendant, certain property adjacent to the remaining portion of "Union Square". In maintaining their right to the procurement of a permanent injunction against the defendant, plaintiffs point to the City Charter, particularly Section 8 thereof, as amended by Act 378 of 1948, the pertinent portion of which reads as follows: "* * * provided that no designations of any property as a public park or public square, and no designation of any sidewalk or street adjacent to such public park or public square shall be changed without the approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet of such property, * * *."
Plaintiffs contend that "Union Square" or "Union Park" is a "square" or "park" within the meaning of Act 378 of 1948 and cannot be sold or exchanged without the required "approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet" and which approval defendant has never obtained; that in addition to the foregoing defendant has not shown that "Union Square" is no longer necessary for public use.
The Orleans Parish School Board and George Singleman, who resides in close proximity to Union Square, filed petitions of intervention and united with defendant in resisting plaintiffs' contentions. The Orleans Parish School Board and the City of New Orleans filed exceptions of no right or cause of action and Singleman filed exceptions of "no right or cause of action", "vagueness" and a "nonjoinder of parties defendants". All exceptions were apparently overruled or referred to the merits of the case by the judge, a qua.
Intervenor, Singleman, then answered which, in substance, is a general denial.
Defendant, the City of New Orleans answered and, in opposition to plaintiffs' contentions, maintained that "Union Square" was never a public "park" or a public "square"; that in 1930, by virtue of the passage of its Ordinance No. 12,063 C.C.S., it was formally dedicated as a "playground", and has continued in use as a "playground" to this day; that the City Charter, Section 8, as amended by Act 378 of 1948, requires the approval of 70% of the property owners within a radius of 300 feet only when it is sought to change the designation of "public parks" or "public squares" and, therefore, the said act does not encompass "public playgrounds"; that the anticipated exchange of property between defendant and the School Board will not change the designation of "Union Square" as a "playground"; that it is a matter within the sound discretion of the Commission Council of the City of New Orleans to determine whether the property to be exchanged with the School Board is necessary for public use, and, therefore, the decision of the City Fathers should not, judicially, be interfered with, unless it can be shown that their decision was arbitrary or capricious. Defendant, in the alternative, pleads the unconstitutionality of Act 378 of 1948, in the event that it is interpreted in conformity with the contentions of plaintiffs, in which case it is an improper delegation of legislative authority.
The City owns "Union Square" and is restricted in its use or disposition only by the charter of the City of New Orleans.
From a judgment in favor of defendant, the City of New Orleans, and the intervenors, Orleans Parish School Board and George Singleman, dismissing plaintiffs' suit, plaintiffs prosecuted an appeal to the Supreme Court, which ordered the record transferred here by virtue of the fact *500 that the Supreme Court, 50 So.2d 643, "is without jurisdiction of this appeal since it involves only the right of a citizen and taxpayer to enjoin the City of New Orleans from transferring to the Orleans Parish School Board a piece of property owned by the City, and receiving in exchange therefor from the School Board another piece of property, there being no amount in dispute or fund to be distributed. La.Const. of 1921, art. 7, Sec. 10."
The fundamental question posed for our consideration by virtue of the foregoing pleadings, is whether the City Charter, Section 8, as amended by Act 378 of 1948 (the pertinent portion of which is quoted hereinabove) places a conditional statutory restriction upon the defendant in connection with its contemplated exchange of property with the School Board in conformity with the provisions of Ordinance No. 17,799 C.C.S.
The trial judge thoroughly analyzed and interpreted both the facts and the law applicable to this case in his written reasons for judgment which, in our opinion, cover the case so fully that we adopt them as our own.
"Three citizens and taxpayers seek to permanently enjoin the City of New Orleans from carrying out the provisions of an ordinance authorizing the Mayor to exchange a portion of a public playground, known as Union Square, for property owned by the Orleans Parish School Board.
"The School Board and a citizen-taxpayer have intervened and joined with the City to resist plaintiffs' demands.
"The gravamen of the complaint is that the City has not complied with the requirements of the City Charter, Section 8 of which (amended by Act 378 of 1948) reads as follows:
"`To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined, or which is needed for public buildings or public utilities owned by the United States, the State of Louisiana or the City of New Orleans, or for the establishment of a railway union depot, or for the enlargement or extension of any hospital which the City of New Orleans utilizes in whole or in part for the care and treatment of destitute persons; provided that no designations of any property as a public park or public square, and no designation of any sidewalk or street adjacent to such public park or public square shall be changed without the approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet of such property, and provided further, however, that the Commission Council may by majority vote rededicate to street purposes any formerly dedicated street which now forms part of any public square, place or park.'
"Plaintiffs contend the City has not shown that the property involved is no longer necessary for public use, and that it has not obtained the written approval of 70% of the property owners required by the City Charter (as amended).
"The City urges that its decision whether or not the property to be exchanged with the School Board is necessary for public use is within the sound discretion of its Commission Council, and should not be judicially interfered with unless arbitrary or capricious; that Act 378 of 1948 requires the consent of 70% of the property owners only when it is sought to change the designation of `public parks' or `public squares' and does not include `public playgrounds', a separate legal and factual category. If the statute is construed otherwise, the alternative plea is that it is unconstitutional as an improper delegation of legislative authority.
"The City further contends that the proposed exchange with the School Board will not change the designation of Union Square as a playground.
"Union Square is a portion of ground in the Gentilly section of New Orleans, bounded by Fairmont Drive, West St. Roch and Humanity Streets in the City of New Orleans. The City has had title and possession *501 for more than a 100 years. The only record of its acquisition by the City is its delineation on a plat or map in 1837 as `a public square'.
"The City owns Union Square as a municipality and is controlled in its use or disposition only by the City Charter. There are no restrictions binding on the City as `donee', either inter vivos or mortis causa.
"The facts briefly are these:
"The City of New Orleans purposes to enter into an Act of Exchange with the Orleans Parish School Board whereby the City will transfer to the School Board a portion of a playground commonly known as Union Square, for which the School Board will transfer to the City certain property adjacent to the remaining portion of Union Square. The School Board will use its portion of Union Square, together with other property to be acquired by the Board, for the erection of a public elementary school. East St. Roch Avenue and Fairmont Drive will be closed in the neighborhood, and the entire section, both City property and School property, will be utilized as a public playground.
"Union Square was never a public park nor a public square. In 1930 it was formally dedicated as a `playground' by Ordinance No. 12,063 C.C.S., in keeping with its immemorial use, and has been continued as a playground ever since.
"Instead of changing the designation or abolishing the use of Union Park as a playground, Ordinance No. 17,799, C.C.S., will greatly increase its size as a public playground. Union Square now has a playground of 107,842.80 square feet. After the provisions of Ordinance No. 17,799 C.C.S., are put into effect, there will be a public playground of 167,426.30 square feet, an increase of more than 50% in area. In addition, there will be a primary playground area all in one parcel of 111,233.90 square feet. This primary play area will not only be larger than the present play area, but will also be a much better arrangement for playground purposes.
"The decision in this matter depends entirely on whether or not there is statutory restriction against the contemplated exchange with the School Board. To review the decision of the City Council as a matter of wisdom or policy is not a function of this Court. A court can nullify the action of a municipality only if its act is illegal, arbitrary, capricious. The Commission Council had public hearings and voted unanimously after employing a firm of expert city planners, who recommended the procedure and acts authorized by the ordinance. The action of the City, therefore, cannot be held to be arbitrary or capricious or an abuse of discretion. The wisdom or advisability of the City's decision is not the concern of this Court, which cannot substitute its opinion for that of the Commission Council. Gibson v. Baton Rouge, 161 La. 637, 109 So. 339, 47 A.L.R. 1151.
"The City cannot be enjoined unless its contemplated action violates statutory limitations, controlled here by Act 378 of 1948, amending the City Charter.
"Courts will never pass upon the constitutionality of a statute when a reasonable interpretation makes it unnecessary.
"Here the statute requires the written approval of 70% of the property owners only in the case of the change in designation of a `public park or public square', using the two terms `park' and `square' interchangeably. No restriction is placed on `playgrounds.'
"In Frauenthal v. Slaten, 91 Ark. 350, 121 S.W. 395, 398, it was held:
"`There is little, if any, distinction between the words "park" and "square"; and when used in this way they mean substantially the same.'
"But a playground is an entirely different category from `park' or `square'. There are many decisions which hold that the term `park' does not include a `playground.' As was held in City of Los Angeles v. Snyder, Mayor, 51 Cal.App. 492, 197 P. 403, 409:
"`None of the many decisions throughout the country which we have discovered, *502 and in which the word "park" is defined, apply that designation to a public playground.'
"There can be no doubt that the property in question is a playground, not a park. The written protest filed with the Commission Council specifically objects to changing the designation `from a playground to a site for a schoolbuilding.' And not only is its status as a playground clearly established by its use as such from time immemorial, but it was officially and formally dedicated as such by Ordinance No. 12,063 C.C.S., in 1930.
"In view of the official dedication of the property as a playground, together with its uninterrupted use as such over the years, its status and designation as such must necessarily have been a matter of common knowledge. If the legislature had intended to include such property in the proviso above quoted, it would have been a simple matter merely to add the term `playgrounds.' The failure to do so must be considered as an intention to exclude them.
"But if the statute were to be interpreted as including `playgrounds' within the proviso requiring 70% of the property owners, it would be unconstitutional as an unlawful delegation of legislative power to private citizens.
"The constitution does not prevent the legislature from imposing conditions governing municipalities in disposing of municipal property and may even prevent entirely such disposition. State ex rel. McGregor v. Diamond, La.App., 167 So. 760.
"While the Legislature can prohibit or permit a municipality to sell or dispose of its property, it cannot delegate to any number of citizens the right to approve such disposition as a mandatory condition precedent to the exercise of such right by the municipality.
"City of Shreveport v. Price, 142 La. 936, 77 So. 883.
"State v. Watkins, 176 La. 837, 147 So. 8.
"State v. Malone, 176 La. 846, 147 So. 11.
"State v. Antee, 176 La. 847, 147 So. 11.
"City of Shreveport v. Malone, 176 La. 848, 147 So. 12.
"State v. Capps, 176 La. 849, 147 So. 12.
"State v. Washburn, 177 La. 27, 147 So. 489.
"Plaintiffs contend there is no delegation of legislative power to the property owners, because the Commission Council must make the final decision. That is true, but the Commission Council cannot make the final decision unless 70% of the property owners make the first decision. Conversely, 30%-plus of the property owners by doing nothing can prevent action by the Commission Council.
"With reference to the state constitution, it is immaterial whether the property is `private' or `public', since in either case there can be no mandatory delegation to private individuals of the right to control its use or disposition.
"Even if the property were a `public square', instead of a `playground', its use for a public school with adjacent playground for the children would not violate its dedication as a `public square', because one of the ordinary and frequent uses of a public square is for the building of a schoolhouse. 50 C.J. 863, par. 84; 35 Words & Phrases, p. 349; Mahon v. Norton, 175 Pa. 279, 34 A. 660.
"If the requirement of 70% written approval of property owners is interdicted as unconstitutional, then the City has authority to sell or change the destination of Union Square if it is no longer necessary for the public use to which it was originally destined, or for other public use therein specified.
"Accordingly, I find:
"(1) That the contemplated exchange with the School Board will still leave Union Square as a playground with a larger area but with its original position slightly shifted.
"(2) That the building of a school on part of Union Square would not violate its use as a square or playground.
"(3) That `Union Square' was dedicated by the City of New Orleans in 1930 as a playground.
*503 "(4) That a `playground' is not included in the requirements of Section 8 of Act 378 of 1948, for written approval of 70% of the property owners to authorize a change in its designation.
"(5) That if Act 378 of 1948, Section 8, were construed as requiring the written approval of a percentage of property owners, it would be an unconstitutional delegation of legislative power to private individuals.
"The injunction sought by plaintiffs is denied and their suit is dismissed."
In connection with the foregoing reasons of the judge, a qua, the Supreme Court, 50 So.2d 643, in transferring the record to this court, observed "The contention of counsel for appellants that this court is vested with jurisdiction since the lower court, in denying the injunction sought by the plaintiffs, ruled that Act 378 of 1948 was unconstitutional, is not borne out by the record. The trial judge held that the Act was not applicable. His further observation that if the statute were to be interpreted as applying in this case it would be unconstitutional as an unlawful delegation of legislative power to private citizens, was merely obiter."
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.