85 So.2d 503 (1955)
229 La. 246
CITY OF NEW ORLEANS
v.
LOUISIANA SOCIETY FOR PREVENTION OF CRUELTY TO ANIMALS.
No. 42332.
Supreme Court of Louisiana.
June 30, 1955.
On Rehearing January 16, 1956.
*504 William J. Guste, John Pat. Little, Roland J. St. Martin, New Orleans, for defendant-appellant.
Albert J. Flettrich, New Orleans, counsel and member, Title Examination Committee of New Orleans Bar Ass'n.
Frank H. Peterman, Alexandria, R. Gordon Kean, Jr., Baton Rouge, Wood H. Thompson, City Attys., Monroe, amicus curiae in support of plaintiff's application for rehearing.
Henry B. Curtis, City Atty., Charles E. Cabibi, Luther E. Hall, Jr., and H. L. Dufour Woolfley, Asst. City Attys., New Orleans, for plaintiff and appellee.
SIMON, Justice.
This is an action for specific performance instituted by the City of New Orleans, seeking to compel the defendant, Louisiana Society for the Prevention of Cruelty to Animals, to comply with its agreement to purchase and take title to a certain area of the property generally known and styled as "Commerce Place", located within its corporate limits and allegedly owned by it since March 7, 1836.
The record reveals that by Ordinance No. 18,645, adopted on December 1, 1953, the Commission Council of the City of New *505 Orleans authorized the Commissioner of Public Buildings and Parks to advertise for sale and to sell that portion of "Commerce Place" adjacent to Square 1589 and "forming the corner of Elysian Fields Avenue and Florida Avenue, as well as the corner of Marigny Street and Florida Avenue, in the Third Municipal District of the City of New Orleans, as shown on plat or survey of city-owned property, made by G. S. Bisso, dated April 12, 1946, and approved by N. L. Marks, Jr., City Engineer."
On January 6, 1954, the Commissioner of Public Buildings and Parks, upon compliance with the above ordinance, offered to sell the said property at public auction, and the defendant having tendered the highest bid was declared the successful purchaser thereof for the price of $43,415 plus costs of advertising and notarial fees. In compliance with its bid, defendant deposited with the City of New Orleans the required 10% deposit, the sum of $4,341.50.
Upon title to said property being tendered, the defendant refused acceptance thereof, predicating its refusal on the ground that the City did not have nor could it transfer a merchantable title. Hence this suit.
In opposition to plaintiff's demand, the defendant avers that the City of New Orleans has no recorded deed translative of title, and that its only record of acquisition is its delineation as a public square, namely "Commerce Place", on a plat or map made in 1833, said plat having been attached to an act of sale dated March 7, 1836, wherein the owner of the property of that particular area sold certain lots and therein recognized the area in question as "Commerce Place."
Defendant further urges that if there was a legal acquisition of said property by the City, which it denies, it was an acquisition to be owned and held by the City for public use and to be exclusively devoted for the benefit of its inhabitants; and therefore said public park cannot be sold or disposed of for private use without an express grant of legislative authority.
The plaintiff City maintains that, though it has no recorded deed translative of title to the property nor a formal dedication thereof to public use, the public square in question, because of its above-stated designation by the owner and thereafter its acceptance and continued use and maintenance by the City as a public square for the use and benefit of the public, became and is still public property subject to its administration and control. Plaintiff further contends that it enjoys the right of alienating this public property under authority granted by Section 8(1) of the Old City Charter, as amended by Act 378 of 1948, the provisions of which were in effect at the time title thereto was tendered.
In the trial court the matter was submitted on a stipulation of fact, as above analyzed by us; and the trial judge rendered judgment recognizing the City as the owner of said public square with the corresponding right of alienating it for private use, and thereupon ordered the defendant to specifically perform its agreement to purchase. From this judgment defendant has appealed.
We thus have presented to us two legal problems, namely: (1) Whether title to Commerce Place is vested in the City of New Orleans, and (2) whether the City enjoys the power and right to alienate this particular public park for private use.
Although there is no record acquisition of this public square by the City of New Orleans, we are firmly convinced and necessarily conclude, that the title to said public square became vested in the City of New Orleans as public property by dedication in 1836. It manifested its acceptance of the dedication by virtue of its recognition, use and maintenance of the property as a public park for a period of over 100 years until the present.
In the early case of President, Recorder and Trustees of City of Cincinnati v. Lessee of White, 1832, 6 Pet. 431, 8 L.Ed. 452, the Supreme Court of the United States announced the principle that dedications of use were valid without the necessity of a land for charitable, religious and public *506 grantee to whom a fee could be conveyed, recognizing that such dedications constitute the "leaving open" of property for common and public use and for the convenience and accommodation of the inhabitants of a municipality. The court therein also pronounced the doctrine that there is no particular form necessary to a dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the purposes intended.
In the case of Pickett v. Brown, 18 La. Ann. 560, we held:
"* * * the dedication of property for public uses may be inferred from facts and circumstances, which leave no reasonable doubt upon the mind of the intention of the owner to make such a disposition, * * *."
See also New Orleans & C. R. Co. v. Town of Carrollton, 3 La.Ann. 282; Town of Carrollton v. Jones, 7 La.Ann. 233; and Municipality No. 2 v. Palfrey, 7 La.Ann. 497.
In Saulet v. City of New Orleans, 1855, 10 La.Ann. 81, we said:
"According to the principles * * *, on which dedications to the public use have been supported, without any grant or deed, it must either appear that the ground has been used with the assent of the owner for public purposes which, in their nature, exclude the idea of private ownership, and for such a length of time, that the public accommodation and private rights would be seriously affected by the interruption of that use, * * *."
Likewise, in City of Shreveport v. Walpole, 22 La.Ann. 526, we said (Syllabus):
"No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of land to the public use. All that is required is the assent of the owner of the land, and the fact that it is being used for the purposes intended. * * *."
We also observe that in the recent case of Richard v. City of New Orleans, 195 La. 898, 197 So. 594, 598, in determining the title of the therein disputed property and its location as shown on a plan of survey, we said:
"* * * A reference to the map will show also the existence of `Commerce Place' which, today, is treated as a locus publicus. * * *"
We are next to consider whether the property herein was susceptible of a valid alienation by the City of New Orleans for private use.
Plaintiff readily concedes that, ordinarily in the absence of statutory authority, property forming part of the public domain is inalienable. However, it contends that the required statutory authority necessary to support its right to sell this public square is granted by Section 8(1) as amended by Act 378 of 1948 of the Old City Charter in effect at the time of this transaction, which provides as follows:
"Section 8. The Commission Council shall also have power:
"Public Streets
"(1) To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined, * * *."
Under the general principles treating with the Division of Things, LSA-Civil Code, Articles 453, 454 and 458 distinguish the various types of public things as follows:
"Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water.

*507 "Hence it follows that every man has a right freely to fish in the rivers, ports, roadsteads, and harbors." LSA-Civil Code, Article 453.
"Things which are for the common use of a city or other place, as streets and public squares, are likewise public things." LSA-Civil Code, Article 454.
"Things which belong in common to the inhabitants of cities and other places, are of two kinds:
"Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, and quays.
"And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues." LSA-Civil Code, Article 458.
In the case of City of Shreveport v. Walpole, supra, in dealing with dedicated property for public use, we said:
"The dedicated property, being held as a public trust, and for public uses, is inalienable by the corporation. It is of that class of property defined in the first clause of article 449 of the Civil Code as `common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common, such as the streets, the public walks, the quays.'"
See City of New Orleans v. Carrollton Land Co., 131 La. 1092, 60 So. 695.
In the case of McNeil v. Hicks & Howell, 34 La.Ann. 1090, we said:
"The doctrine was early declared by this Court, that a municipal corporation may alienate, or change the use and destination of public places with the consent and by the authorization of the sovereign power first obtained, whenever the public interest may require it. De Armas v. Mayor [etc., of New Orleans], 5 La. 132; Mayor v. Hopkins, 13 La. 326; Mayor v. Leverich, 13 La. 332." (Italics ours.)
In the case of Parish of West Carroll v. Gaddis, 34 La.Ann. 928, we expounded our views regarding the rights and powers of parishes and municipal corporations to alienate property acquired by them, respectively, and devoted to public service. In recognizing their incidental and implied rights to alienate or dispose of property held by them, and in distinguishing rights as to public property and property of a private nature, we said:
"* * * Whatever may be the right of those corporations, in such cases [property real or personal of a private nature] the power could not be extended to instances of property acquired by dedication to public use generally, and devoted to some special purpose, for then the property becomes public property, and cannot be alienated without legislative authority. Dillon, 3d Ed., §§ 574, 575 et seq., and notes."[1]
In Henderson v. City of Shreveport, 160 La. 360, 107 So. 139, it was held that the police jury could not sell or otherwise dispose of a courthouse site, without express and special authority from the Legislature, because the property having been expressly bought for the purpose of erecting thereon the court building became a public thing, or hors de commerce.
The prohibition against power of a municipality to sell, without express legislative authority, property devoted to public use is based on the theory that such property by its very nature and destination is owned and held by the municipality as a trustee in trust for the use and benefit of the citizens of the municipality; and our *508 law will not permit the municipal corporation to divest itself of the trust, nor to deprive the citizens of their rights as beneficiaries in the common use of the property, unless such action be made by and through express legislative sanction or authority. This theory is further founded on the principle that a municipal corporation is not a legal entity or person whose interest can be considered separate and apart from its people. It can only act as an instrument created and perpetuated for the common welfare of the people. Its officers, as such, are nothing more than agents of the public. In that capacity the scope of their authority can not exceed that which is defined through its creation. It follows that the usual authority and control exercised by a municipality over property used by its inhabitants as public property does not grant to its corporate officers the right to transfer said property to and for private purposes, thereby depriving the public of its use, without express legislative authority.
In line with the above cited authorities and expressions quoted therefrom, we conclude that the general authority "to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined," embodied in section 8 of the City Charter, supra, and relied upon by the City in its effort to effect a valid alienation, is not such an express and specific authorization as required by our codal articles and jurisprudence to alienate property designated and treated as locus publicus, the character of "Commerce Place".
We approve of the following principle:
"* * * There is authority which seems to support such a broad construction of similar general statutory grants of authority in other states, but we think the sounder view is that enunciated in State ex rel. Northern Pacific Ry. Co. v. Superior Court, 136 Wash. 87, 238 P. 985, wherein the court said it was the consensus of authority that the legislature could authorize a municipality to convey property held in its trust capacity for a particular use, but that it was equally the consensus of opinion that it must be done specially and could not be implied from a general grant of power to acquire, alien and convey. See People ex rel. Lehigh Valley R. Co. v. State Tax Comm., supra [206 App.Div. 549, 202 N.Y.S. 310], and Brooklyn Park Commissioners v. Armstrong, supra [45 N.Y. 234], and also Lewis v. [City of] Providence, 10 R.I. 97." Buckhout v. City of Newport, 68 R.I. 280, 27 A.2d 317, 322, 141 A.L.R. 1446.
The fact that the City declares this property no longer necessary to the public use as originally destined does not in any manner alter, change or affect the requirements which must be observed and complied with, as above stated, when and if it seeks to alienate public property to private ownership.
For the reasons assigned, the judgment of the lower court is annulled, reversed and set aside, and plaintiff's suit is hereby dismissed. All costs to be paid by the plaintiff.
HAMITER, J., concurs in the decree.
McCALEB, Justice (dissenting).
I, of course, agree with the fundamental principle stated in the majority opinion that a municipality has only such powers as delegated to it by the Legislature; that it has no right to alienate its property destined to public use, such as streets, sidewalks and the like, in the absence of special authority conferred upon it by the law and that a grant of general corporate power to purchase, hold, lease, transfer and convey real and personal property will not suffice. See annotation 141 A.L.R. 1447-1462.
However, it is my opinion that the provisions of Section 8(1) of the old City Charter of New Orleans, Act 159 of 1912, *509 as amended by Act 338 of 1936, as finally amended by Act 378 of 1948, confers upon the City express and specific authority to sell or otherwise dispose of the property involved in this case.
Section 8 of the City Charter deals with "Discretionary Powers of Council" and paragraph 1 thereof, which has been part of the Charter since the enactment of Act 159 of 1912, has, but for slight changes unimportant to this case, been couched in the same verbiage as the original enactment. As amended by Act 378 of 1948, paragraph 1 of Section 8 confers upon the Commission Council the power "To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined * * *". (Emphasis mine.)
Why the quoted provisions are not of a specific nature, the majority opinion does not disclose. Our predecessors did not entertain such a view for, in discussing this very Section of the Charter in the three cases heretofore reaching this tribunal, which involved the sale or exchange of public streets, the court had no difficulty in recognizing this provision to be an express grant of power by the Legislature. See State ex rel. Ruddock Orleans Cypress Co. v. Knop, 147 La. 1057, 86 So. 493, Schernbeck v. City of New Orleans, 154 La. 676, 98 So. 84 and State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725, 733. In the last cited case it was said:
"* * * The right of the City Council of New Orleans to sell streets which are no longer necessary for the public use to which they were originally destined has been recognized by this court. * * * The closing or selling of such streets rests within the sound discretion of the Commission Council."
Hence, it appears that the majority view herein is in direct discord with the prior jurisprudence.[1]
Nor does the fact that this case does not involve the sale of a public street or sidewalk detract from the Council's authority to dispose of the real estate for the above-quoted provisions, in addition to empowering the Council to sell its streets and sidewalks, broadly includes all other property[2] when, by a two-thirds vote, it concludes that the property is no longer necessary for the public use to which it was originally destined. There is no room for the application of the doctrine of ejusdem generis in construing such a statutory provision because the words "or other property" following the authority given to sell any street or sidewalk necessarily embraces all other property formerly in public use save public parks and public squares, which are particularly covered by other provisions. The only characteristic by which "other property" may be likened to a street or a sidewalk is its identity of use, i. e., dedication as the common property of the inhabitants.
*510 I apprehend that the ruling herein has placed in jeopardy the validity of any title which has been derived from the City of New Orleans under sales or exchanges founded on the authority of Section 8(1) of the old City Charter, Act 159 of 1912, as amended. Indeed, it may even affect titles to property sold by other municipalities under similar grants of power by the Legislature.
I respectfully dissent.
HAWTHORNE, Justice (concurring in the decree).
As stated in the majority opinion, we are presented in this case with two legal problems: "(1) Whether title to Commerce Place is vested in the City of New Orleans, and (2) whether the City enjoys the power and right to alienate this particular public park for private use."
The majority concludes that the title to Commerce Place is vested in the City of New Orleans, and I fully agree with this conclusion.
With reference to the second question, it is stated in the majority opinion that Commerce Place is a public park and has been used and maintained as such for a period of over 100 years. Commerce Place having been found to be a public park, let us now consider the provisions of Section 8(1) of Act 159 of 1912 as amended by Act 378 of 1948. This act provides:
"Section 8. The Commission Council shall also have power:
"Public Streets
"(1) To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined * * *; provided that no designations of any property as a public park or public square, and no designation of any sidewalk or street adjacent to such public park or public square shall be changed without the approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet of such property * * *." (Italics mine.)
It is my view that Section 8(1) of Act 159 of 1912 as amended by Act 378 of 1948 confers upon the City express legislative authority to sell, by a two-thirds vote of the Commission Council, any property to which it has title and which is no longer necessary for the public use to which it was originally destined except "a public park or public square", and even this kind of public property may be sold by the City pursuant to the provisions of the statute provided its designation as a public park or public square is changed with the approval of 70 per cent of the property owners within a radius of 300 feet of the property.
The property involved in this suit was found by the majority of this court to be a public park, and there has been no showing that 70 per cent of the property owners within 300 feet of this park have agreed in writing to a change in its designation as a public park. In the absence of a showing that this requirement of the statute has been complied with, I concur in the decree.

On Rehearing
PONDER, Justice.
We granted a rehearing in this case to reconsider our holding that the plaintiff could not compel the defendant to accept title to a piece of real estate designated as Commerce Place.
There were two questions presented in this case which were discussed at length in our original opinion, viz.: (1) Whether title to Commerce Place is vested in the City of New Orleans and (2) Whether the City enjoys the power and right to alienate this particular public property for private use.
Briefs have been filed as amicus curiae by the Committee on Title Examination of *511 the New Orleans Bar Association wherein we are asked to clarify our interpretation of Section 8(1) of the Charter of the City of New Orleans as amended by Act 378 of 1948. Amicus curiae briefs have also been filed by the Cities of Alexandria, Baton Rouge, and Monroe, wherein it is stated that many transfers of property have taken place, under the authority of Act 314 of 1946, as incorporated in the LSA-Revised Statutes of 1950 as Title 33, Section 4712, whereby public property has been converted to private ownership, and that the import of our decision on original hearing leaves the validity of these titles in doubt.
We are still of the opinion that title to Commerce Place is vested in the City of New Orleans. Dedication of property is frequently connected with the sale of lots where the owner sells the lots under a plat wherein he designates certain portions thereof for public use. Sarpy v. Municipality No. 2., 9 La.Ann. 597, 61 Am.Dec. 221. As pointed out in our original opinion, the owner of the property sold lots with a plat attached to the various acts of sale wherein the property in dispute was designated as "Place du Commerce". This clearly established a dedication of the property for public use. Woodcock v. City of New Orleans, 5 Cir., 222 F. 260, 138 C.C.A. 50; Town of Vinton v. Lyons, 131 La. 673, 60 So. 54. And this court in Heirs of David v. City of New Orleans, 16 La.Ann. 404, recognized the testimony of expert witnesses to the effect that the designation "Place" before a name denoted a public square.
The question that has given us most concern is whether or not the City has been granted express authority to sell property of this nature. The pertinent provision of the city charter reads as follows:
"To order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined, or which is needed for public buildings or public utilities owned by the United States, the State of Louisiana or the City of New Orleans, or for the establishment of a railway union depot, or for the enlargement or extension of any hospital which the City of New Orleans utilizes in whole or in part for the care and treatment of destitute persons; provided that no designations of any property as a public park or public square, and no designation of any sidewalk or street adjacent to such public park or public square shall be changed without the approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet of such property, and provided further, however, that the Commission Council may by majority vote rededicate to street purposes any formerly dedicated street which now forms part of any public square, place or park." Act 378 of 1948, Section 8(1).
It would appear that under the above quoted section of the city charter as amended, if Commerce Place is a public square or park, that its designation could not be changed without the approval of 70% of the adjoining property owners. No such written approval of the adjoining property owners was secured in this case and the city ordinance under which this sale was made is not based on the written approval of such adjoining property owners.
Section 8(1) of the city charter is express authority granted the city by the Legislature to change the designation of the property. Schernbeck v. City of New Orleans, 154 La. 676, 98 So. 84; State ex rel. Porterie v. Housing Authority of New Orleans, 190 La. 710, 182 So. 725. We agree with the statement that public property cannot be alienated without legislative authority, and we are in accord with the authorities cited on original hearing in support of this pronouncement of law but we think that Section 8(1) of the city charter, as amended by Act 378 of 1948, is an express and specific authorization to change the character of public squares, no longer needed for public use, to that of private ownership. But this express authority is *512 conditioned upon the city securing the written approval of the adjoining property owners for the reason that the property involved in this case (Commerce Place) was dedicated as a public square.
A "square" has been defined as an open area in a city or village left between streets at the intersection or formed by expansion, or treated as a park; in fact there is little distinction between a public square and a public park. 81 C.J.S., Square, page 841. "The word `square' indicates a public use, either for purposes of a free passage, or to be ornamented and improved for grounds of pleasure, amusement, recreation, or health." 39 Am.Jur., Verbo, Parks, Squares and Playgrounds, Section 2, page 804. In other words, a public square is a space of ground set apart for the use of the public.
It was argued that the issue in this case is whether or not the City has authority to sell Commerce Place under the provision of Section 8(1) of the city charter, as amended, authorizing the sale or change of the destination of any street or sidewalk or "other property" by a 2/3 vote of the city council. In deciding whether there was a dedication of Commerce Place it was necessary to determine its character and its specific designation. It being a public square, it could not be disposed of as "other property" because the charter requires the written approval of 70% of the property owners within a radius of 300 feet of such property in order to change its designation as a public square. Moreover, this court cannot ignore the designation of the property when it is apparent on the face of the record.
For the reasons assigned, our original decree dismissing the plaintiff's suit is reinstated and hence plaintiff's suit is dismissed.
McCALEB, Justice (dissenting in part).
In line with the dissenting opinion heretofore filed by me in this case, I subscribe to the view of the majority on rehearing that the City of New Orleans is given express authority by Section 8(1) of the Old City Charter, Act 378 of 1948, to change the destination of public property when authorized to do so by a two-thirds vote of the Commission Council, save in certain cases. By this ruling, the Court has effectively corrected the principal error of the original opinion.
On the other hand, I see no valid reason for the conclusion reached by the Court denying the City the relief prayed for, which was granted by the District Court, on the theory that Commerce Place is a "public square" and, therefore, comes within the proviso contained in Section 8(1) of the Charter "that no designations of any property as a public park or public square, * * * shall be changed without the approval in writing of seventy per cent (70%) of the property owners within a radius of three hundred (300) feet of such property, * * *". (Italics mine.)
In the first place, as stated in my previous dissent, there is nothing in the pleadings, stipulation of facts or exhibits which defines or describes Commerce Place as a public square and it is not contended by either litigant that the property was designated as such or has been used for such a purpose. Indeed, when the case was orally argued on rehearing, counsel for defendant stated, in response to a question from the Bench, that he was not contending that it was a public square or park.
In these circumstances, it appears to me that the present decision deprives the City of its day in Court, giving it no chance whatever to refute the correctness of the ruling which, as I view it, is grounded on the assumption that all public places are necessarily public squares, or even to assail the validity of the proviso which delegates to a few property owners the right to veto the action of the duly constituted authorities representing the people of the City.[1] A more equitable procedure would seem to *513 dictate a remand of the case for the amendment of pleadings and admission of evidence.
In addition, to characterize Commerce Place as a public square because Corpus Juris broadly defines a square to be an open area in a City, or because some experts testified in another case decided by this Court that the designation "Place" before a name denoted a public square,[2] is clearly erroneous in my opinion and has the effect of making the proviso apply in all cases, even for streets and sidewalks bordering on public places, thus substituting the proviso in place of the permissive grant.
The only evidence in the case touching upon the use of Commerce Place is found in a letter from the Secretary of the Board of Assessors to the Assistant City Attorney, which was admitted without objection, showing that it has been considered as a neutral ground adjoining the abutting streets. The dedicatory plat would, in itself, repel the idea that the property was at any time designated as a public square. It shows that it was designated as "Place du Commerce" which, translated from the French, is a place where persons gather for the transaction of business, trade and commerce. See Spiers & Surenne's French and English Pronouncing Dictionary. A public square connotes the idea of a place for recreation and play and, as applied to a municipality, a recreational place bounded by city streets.
For these reasons, I respectfully dissent.
HAMITER, Justice (concurring in part and dissenting in part).
I agree that the title to the property involved herein is vested in the City of New Orleans; that Section 8(1) of the City Charter provides specific legislative authority for the sale of city property no longer necessary for public use, except that thereunder the alienation of a public park or public square must be approved in writing by 70% of the property owners within a radius of 300 feet thereof; and that no such approval was secured in this case.
However, I am unable to conclude from the record that "Place du Commerce" was and is in fact a public park or public square. Whether it is to be so considered and treated was not made an issue by the pleadings, and no evidence relating thereto was introduced. The question arose for the first time in this court.
I am of the opinion that the cause, in the interest of justice and pursuant to Code of Practice, Article 906, should be remanded to the district court for further proceedings concerning that particular question, granting leave to both litigants to offer appropriate amendments to their pleadings and to introduce any relevant and otherwise admissible evidence.
NOTES
[1] "A municipal corporation has no implied or incidental authority to alien, or to dispose of for its benefit property dedicated to or held in trust for the public use or extinguish the public uses in such property * * *." Dillon on Municipal Corporations, Vol. 3, 5th Ed., § 1102, p. 1758.
[1] See also Blocker v. City of New Orleans, 50 So.2d 498, wherein the Court of Appeal for the Parish of Orleans held that the City of New Orleans had authority to exchange certain property, known as "Union Square", for other property to be transferred to it by the Orleans Parish School Board. That decision was inferentially approved by this court by denial of plaintiff's application for a writ of certiorari or review.
[2] Excepting public parks and public squares, the destination of which cannot be changed, under special provisions contained in Section 8(1) of the statute, without the approval in writing of 70% of the property owners within a radius of 300 feet of such property. In this connection, it is to be noted that, whereas "Commerce Place" is twice referred to in the majority opinion as a public park and thrice termed a public square, these descriptions were evidently given through inadvertence because there is nothing in the record, stipulation of facts or exhibits which characterizes the place either as a public park or a public square and it is not contended by anyone that the property has been destined or used for such purposes. Cf. Blocker v. City of New Orleans, La.App., 50 So.2d 498.
[1] Several years ago I pointed out in a dissenting opinion on rehearing in State ex rel. Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65, that the rule that this Court would not consider points which are not either urged or adjudicated upon in the District Court or raised and argued before this Court "* * * has been breached when the court was inclined to do so, * * *". See 215 La. at page 1044, 42 So.2d at page 77. In that case, the Court had granted the City of New Orleans a rehearing for the express purpose of considering the question of whether the relator was entitled to receive some $5,700 in salary for which he had rendered no service whatever. Yet it was held on rehearing that, since the City had not previously questioned the propriety of the judgment on that ground, it would not be considered. I thought that case formed an exception to the rule which yields when the refusal of the rehearing would work manifest injustice.

In the case at bar, however, the Court, without referring to its decision in the Murtagh case, fails to follow the rule it invoked therein. The applicability of the doctrine to this case, unlike the Murtagh case, seems most pertinent as it is difficult to perceive why an adjudication favorable to the City on the issues presented for determination herein could possibly work any injustice to the defendant.
[2] These generalities are not very impressive when it is considered that New Orleans, like most other cities, has many public streets designated as "Place," such as University Place, Exchange Place, etc.